**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

ANNE MARIE MARQUIS,      )
      )
      Plaintiff,      )
      )
      v.      )      C.A. No. 05-501-SLR
      )
STATE OF DELAWARE,      )
DEPARTMENT OF SERVICES FOR      )
CHILDREN, YOUTH AND THEIR      )
FAMILIES,      )
      )
      Defendant.      )

## OPENING BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

STEPHANI J. BALLARD, I.D. #3481
JAMES J. MAXWELL, I.D. #2892
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendant

DATED: October 2, 2006

# **TABLE OF CONTENTS**

Page

TABLE OF CITATIONS ................................................................................................. iii

NATURE AND STAGE OF THE PROCEEDINGS ...........................................................1

SUMMARY OF ARGUMENT .........................................................................................3

STATEMENT OF FACTS ................................................................................................4

    1.   Plaintiff's early complaints of harassment, and Defendant's remedial action...4

    2.   Plaintiff's lack of complaints from August 1999 until April 2003 ...................5

    3.   Plaintiff's new complaints, about *de minimis* interactions with Mr. Brown, in 2003- 2004 and DSCYF's prompt remedial action with regard to plaintiff's new complaints ...........................................................................................................6

    4.   Other remedial action offered to plaintiff, which was declined.......................10

ARGUMENT ................................................................................................................11

    I.     SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANT AS TO COUNTS I AND II, AS THERE IS NO EVIDENCE WHATSOEVER IN THE RECORD TO SUPPORT PLAINTIFF'S ALLEGATIONS OF GENDER DISCRIMINATION; PLAINTIFF FAILS TO STATE A CLAIM FOR "RETALIATION" AS A MATTER OF LAW; CLAIMS FROM 1999 WOULD BE BARRED BY THE STATUTE OF LIMITATIONS, AND THE RECORD CONTAINS NO EVIDENCE OF ANY ILLEGAL OR DISCRIMINATORY CONDUCT ON THE PART OF DEFENDANT ...........................................................................................11

        A.  Standard of Review .........................................................................................11

        B.  There is No Evidence In The Record to Support Plaintiff's Allegations of Gender Discrimination or "Retaliation" for Reporting an Alleged Title VII Violation12

           1.   The discovery period has closed and plaintiff has failed to conduct any discovery in this case.  Plaintiff has also failed to respond to interrogatories and requests for production propounded by Defendant, seeking details as to the nature and basis of plaintiff's claims; accordingly, plaintiff is barred from introducing such evidence or witnesses, if any, in responding to this motion, or at trial, pursuant to F.R.C.P. 37(c)(1) ...................................................15

i

2.  Count II: Plaintiff fails to state a claim for Title VII "retaliation".............19

3.  Count I:  The evidence of record rebuts Plaintiff's claims, and shows that the Defendant employer took prompt, remedial action to every single one of plaintiff's complaints (even those which were *de minimis*) such that no reasonable jury could return a verdict in her favor on Counts I, gender discrimination ...........................................................................................20

    a.  Plaintiff's claims of alleged harassment/hostile work environment in 1999 fail to state a claim for hostile work environment and, in any event, are barred by the statute of limitations..................................................21

    b.  There was no "continuing course of conduct" for purposes of Title VII as Plaintiff reported no harassment following the 1999 events until March 2003......................................................................................................25

    c.  Plaintiff's allegations of alleged "harassment" in 2003 and 2004 fail, on their face, to rise to the level of a Title VII violation, as the interactions between plaintiff and her co-worker were incidental, non-harassing events and simply reflect *de minimis* subjective annoyances to plaintiff........27

    d.  Moreover, even notwithstanding the insubstantial nature of the complaints in 2003 and 2004, employer took appropriate and prompt remedial action.....................................................................................31

II.    SUMMARY JUDGMENT MUST BE GRANTED AS TO COUNT III, A CLAIM ALLEGING VIOLATION OF 42 U.S.C. §1983, AS THE STATE OF DELAWARE AND ITS AGENCIES ARE IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT.................................................................35

    A.  Standard of Review.........................................................................................35

    B.  Eleventh Amendment Immunity....................................................................35

CONCLUSION ....................................................................................................................38

## TABLE OF CITATIONS

**Case Name**                                                                                    **Page**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) .....................................................11

Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir. 1990) ....................13, 28, 30, 31

Bequeath v. L.B. Foster Co., 367 F.Supp.2d 779 (W.D. Pa. 2005) ............................12, 17

Blankenship v. Parke Care Centers Inc., 913 F.Supp. 1045 (S.D. Ohio 1995),
  aff'd 123 F.3d 868 (6th Cir. 1997), cert. denied, 522 U.S. 1110 (1998) ...............12

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998)...............................................26

Burlington Northern & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006) ......................14

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) .....................................................11, 20, 38

Edelman v. Jordan, 415 U.S. 651 (1974).............................................................................36

EEOC v. Foodcrafters Distribution Co.,
  2006 WL 489718, Slip Op. (3d Cir. 2006) .........................................14, 28, 29, 30

Faragher v. City of Boca Raton, 524 U.S. 775 (1998)....................................23, 24, 29, 30

Garcetti v. Ceballos, 126 S.Ct. 1951 (2006) ......................................................................37

Harris v. Forklift Sys. Inc., 510 U.S. 17 (1993)....................................................13, 29, 30

Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999) ........................................................18

Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990) ...............................................12, 17

Moore v. City of Philadelphia, __ F.3d __, 2006 WL 2492256 (3d Cir. 2006).................14

Neely v. Samis, 183 F.Supp. 2d 672 (D.Del. 2002)............................................................36

Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998)....................................31

Price v. MacLeish, 2006 WL 2346430, Sleet, J. (D.Del. 2006) .........................................37

Roman v. City of Reading, 121 F.Appx. 955, 2005 WL 332416 (3d Cir. 2005)................17

Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996)..................................................36

<u>Shramban v. Aetna,</u> 115 Fed.Appx. 578, 2004 WL 2504364 (3d Cir. 2004) .................24

<u>West v. Philadelphia Electric Co.,</u> 45 F.3d 744 (3d Cir. 1995) ...........................25, 26, 34

<u>Weston v. Commonwealth of Pennsylvania,</u> 251 F.3d 420 (3d Cir. 2001) .............. *passim*

<u>Will v. Michigan Dept. of State Police,</u> 491 U.S. 58 (1989) ...........................................37

**<u>Statutes, Rules and Other Authorities</u>**

United States Constitution, First Amendment ...................................................3, 35, 37, 38

United States Constitution, Eleventh Amendment ......................................................3, 36

42 U.S.C. §1983...................................................................................................... *passim*

42 U.S.C. §2000e .............................................................................................................1

42 U.S.C. §2000e-2.................................................................................................. *passim*

42 U.S.C. §2000e-3.................................................................................................. *passim*

42 U.S.C. §2000e-5.........................................................................................................19

Federal Rule of Civil Procedure 26(a)(1) ...............................................................16, 17

Federal Rule of Civil Procedure 26 (a)(2) .....................................................................18

Federal Rule of Civil Procedure 26(e)(1) .......................................................................17

Federal Rule of Civil Procedure 37(c)(1) ...................................................15, 16, 17, 18

Federal Rule of Civil Procedure 56(c) .....................................................11, 12, 16, 38

Federal Rule of Civil Procedure 56(e) .................................................................4, 12, 17

Federal Rules of Evidence 702 .......................................................................................18

29 C.F.R. §1601.2ff .........................................................................................................19

29 C.F.R. §1601.93 .........................................................................................................23

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff filed the complaint in this matter on July 19, 2005, against her employer, State of Delaware, Department of Services for Children, Youth and their Families (DSCYF), alleging gender discrimination and sexual harassment, pursuant to Title VII, 42 U.S.C. §2000e, *et. seq*. (Docket Index #1 (D.I. 1)(A-1-11). These claims arose out of allegedly harassing behavior in the workplace on the part of a fellow employee (not her supervisor). Plaintiff also alleged that Defendant "retaliated," pursuant to 42 U.S.C. §2000e-3, by "failing to protect" her from the actions of her co-worker. Finally, plaintiff alleged that Defendant violated 42 U.S.C. §1983 and the First Amendment by retaliating against her for allegedly speaking out on matters of public concern. Defendant answered plaintiff's complaint on November 7, 2005, denying all wrongdoing. (D.I. 3) (A-12-18).

This Court, by Order dated January 12, 2006 (D.I. 6) (A-19-21), set September 1, 2006 as the date by which discovery must be completed. Plaintiff has engaged in no discovery whatsoever since the inception of this case, other than to file belated initial disclosures (following three written requests by defendant to do so) on July 6, 2006 (D.I. 12) (A-107-111). Defendant timely filed its initial disclosures on February 7, 2006, which included, as documentary evidence, production of plaintiff's entire personnel file, as well as that of the male co-worker about whom she complained. (D.I. 8) (A-22-72-B). Defendant also propounded sets of Interrogatories and Requests for Production to plaintiff on March 14, 2006. (D.I. 9-10) (A-73-101). These requested discovery of, *inter alia*, detailed information as to plaintiff's claims, witnesses, etc. Plaintiff never responded to this discovery, despite follow up letters from defendant requesting that the discovery be answered. (*See* copies, attached hereto, A-102-06). Thus, the record, for purposes of this motion, consists solely of

the parties' initial disclosures and the documents produced by Defendant.

This is Defendant's Opening Brief in support of its Motion for Summary Judgment, pursuant to F.R.C.P. 56, which has been simultaneously filed with the Court.  Defendant is entitled to summary judgment for the reasons set forth herein.

## <u>SUMMARY OF ARGUMENT</u>

In this case, Plaintiff has alleged claims of discrimination and retaliation pursuant to Title VII, as well as "First Amendment Retaliation" in violation of §1983. Plaintiff, represented by counsel throughout, has engaged in no discovery whatsoever in the nine month discovery period allotted by the Court, and has failed to respond to Defendant's discovery requests. The record, consisting solely of the parties' initial disclosures and documents produced by Defendant, provides no evidence from which a reasonable jury could find in plaintiff's favor as to her claims of hostile work environment/gender discrimination and, in fact, affirmatively supports a conclusion that there was no actionable sexual harassment and no liability on Defendant as a matter of law. Plaintiff's Title VII retaliation and First Amendment retaliation counts are barred as a matter of law, for failure to exhaust administrative remedies and Eleventh Amendment immunity, respectively. In addition, as with the discrimination claim, there is no evidence whatsoever in the record to support Plaintiff's claims of "retaliation."

## STATEMENT OF FACTS

### 1. Plaintiff's early complaints of harassment, and Defendant's remedial action.

The plaintiff, Anne Marie Marquis, began working for defendant/employer, State of Delaware, Department of Services for Children, Youth and Their Families (DSCYF) at the New Castle County [Youth] Detention Center, as a probationary child psychological assistant on June 15, 1999. (A-72). At some point thereafter, she was offered permanent State employment as a psychologist at the detention center. Michael D. Brown is also a State employee, hired in June, 1997, who has worked as a Youth Rehabilitation Counselor (YRC), and subsequently a YRC supervisor, at the Detention Center facility (hereinafter referred to as the "facility"). The plaintiff and Brown are coworkers, but work in different units at the same facility and have different supervisors and have never been in a supervisor/supervisee relationship to one another. (*See e.g.* A-34, 36-38). While they do not work together, Brown is still required to report to administrators who are located in the vicinity of plaintiff's office. (A-57).

Plaintiff alleges that soon after her employment at the facility began, in 1999, Brown began verbally harassing her, making sexual remarks and "leering" at her. (A-44-46)[1] She also complains that, even though she asked him to leave her alone, he continued to pursue her company. (A-44). After an incident in July 1999 in which Mr. Brown allegedly waved a metal detector over her body in a sexual manner, plaintiff advised her immediate supervisor, Dr. Andrew Hadden, that she felt she was being harassed by Brown. (A-45). Hadden

---

1  The facts as noted herein are taken from allegations made by plaintiff herself in an "Affirmative Action Complainant Form—Attachment" filed with her employer, as part of an internal complaint process, in May 2003 (A-43-51). This is not a sworn statement, and was produced by Defendant as part of its own initial disclosures. For purposes of summary judgment, defendant—without conceding that the document could meet plaintiff's burden in responding to this motion under Rule 56(e), will present the facts as alleged by plaintiff

suggested that he hold a meeting with plaintiff and Brown to discuss the situation or that, if plaintiff preferred, he would speak to Brown himself.  Plaintiff chose to attend the meeting on August 4, 1999, and read a statement outlining her complaints about Brown; Brown denied the allegations at the meeting.  (A-46).  Plaintiff complains that she felt Hadden "took Brown's side" in the matter, and she subsequently called Norwood Coleman, the facility's EEO officer.  (A-46-47).  Mr. Coleman returned her call but plaintiff, claiming she was "too fearful of retaliation" to discuss the matter with him, never pursued this avenue of relief. (A-47).  Plaintiff was fully aware of her rights and the administrative remedies available to her , as she had signed a memorandum on June 16, 1999 (less than one month prior to the alleged incidents), attesting to her awareness of Employer's anti-discrimination policies and employee grievance procedures.[2] (A-72A-72B).

The record reflects nothing further in the way of complaints by plaintiff or action by defendant, except that in the spring of 2000, Brown was promoted to a supervisory position in his YRC unit.  Plaintiff notes that this had the beneficial effect of moving him to "C Shift" (a night shift) where she "had relatively little contact with him.  It was more pleasant for me because I did not have to actively avoid him all of the time."  (A-47).

## 2. Plaintiff's lack of complaints from  August 1999 until April  2003.

Defendant's prompt remedial measures in 1999 were apparently effective.  The record is devoid of any complaints by plaintiff about Michael Brown, or about any sort of "harassment" or "retaliation" between 1999 and April, 2003, at which time plaintiff reported

therein.
2  This document stated, *inter alia*, "every employee . . . [has] the right under the law to register complaints when it is felt that the law has been violated in any respect.  The complaint may be registered with the Division Director . . . the Department's Affirmative Action Officer [Coleman], State Human Relations Commission . . . . or by Merit System Appeal procedure."  (A-72A).

new complaints of allegedly harassing incidents involving Brown. The two employees continued to work at the facility, on different shifts, without apparent incident for three and one half years. In April 2003, plaintiff belatedly alleged that Mr. Brown spoke to her, on a weekend in 2001, about his former behavior and "basically trying to get me to forgive him." (A-47). However, the purported incident was not of a sexual nature, no contemporaneous record exists (from a plaintiff who otherwise immediately reported every incident of concern), and plaintiff did not make defendant aware of it until two years later. Id.

### 3. Plaintiff's new complaints, about *de minimis* interactions with Mr. Brown, in 2003-2004 and DSCYF's prompt remedial action with regard to plaintiff's new complaints.

In late March 2003, Michael Brown's shift was changed from "C shift" to "A shift," which overlaps the normal business hours day shift which plaintiff works. (A-33, 48). This shift change resulted in several incidental encounters between plaintiff and Mr. Brown at the facility. When plaintiff first learned of the shift change she was "very disturbed" and spoke to her then-supervisor, Earl Harrington, about her concerns, given Brown's past behavior. (A-48). "To Mr. Harrington's credit", plaintiff reported in her affirmative action complaint, her supervisor told her "not to worry about it, and that if when Mr. Brown moved to A shift there is a problem, I should tell him and he would handle it." Id. Plaintiff claims that when Brown started work on this shift, he immediately began to "force friendliness" on plaintiff. Id. As examples, plaintiff says that Brown asked her for help on the computer and, at a birthday lunch at work, with plaintiff and other coworkers, Brown came in and said "I want to be part of this" and asked plaintiff if she had made the pie. Id. Plaintiff has complained that the mere presence of Brown near her offices is "offensive to her." (A-58).

Plaintiff states that when Harrington, her supervisor, noticed plaintiff's apparent

discomfort with Brown, he responded by affirmatively suggested a meeting, either with himself, plaintiff and Brown, or just between him and Brown. (A-48-49). As in 1999, Plaintiff elected to go to the meeting, which took place on April 11, 2003. (A-3, 49). During this meeting, they discussed the 1999 allegations, and plaintiff expressed her unhappiness with the recent "forced friendliness" and her perception that Brown's comments "force unnecessary verbal responses" from her. (A-49). Plaintiff notes that she felt Mr. Harrington "did a better job" at the meeting with Brown than Dr. Hadden did in 1999, and allowed her to express her thoughts and feelings. Id. Plaintiff states that, at the end of the meeting it was agreed that Mr. Brown should not to talk to her about non-work issues. (A-50).

Plaintiff's next complaint was documented in an email to Harrington dated Wednesday, April 23, 2003 at 1:28 p.m., in which she states that, at 11:55 that morning, she went to get documents off the printer and Brown asked her "How are you doing, Doc?," as well as unlocking a door for her as she exited the hallway. (A-53). She stated that Brown's continued "forced friendliness" was unwelcome and that it was causing her stress and medical symptoms. Id. Plaintiff ended the April 23, 2003 email to Harrington by requesting a meeting. Id. That same afternoon, Supervisor Harrington responded to plaintiff and copied Karen Smith, DSCYF Human Resources, suggesting that plaintiff make an appointment with Norwood Coleman, the EEO director, and stating that he (Harrington) "will talk to Mr. Brown about his forced friendliness. I was not aware of your medical/emotional symptoms." (A-40). Coleman responded immediately on Thursday, April 24th, asking plaintiff to call him at home if necessary. An appointment between plaintiff, Coleman and Karen Smith was scheduled for Friday April 24, 2003, but was postponed to May 12th due to Coleman's illness on the original date. (A-39).

On May 6, 2003, plaintiff sent another email to Harrington, stating that Brown had made a comment to her about an error on a report and asked her if a document on the fax machine belonged to her. (A-52). On May 7, 2003, plaintiff confirmed by email that she had turned in internal affirmative action complaint forms (A-43-51) and Coleman acknowledged receipt. (A-42).

DSCYF conducted an investigation into plaintiff's complaint, and Norwood Coleman issued a written report and recommendations on September 23, 2003. (A-35-38). The report documented Ms. Marquis' complaints both in 1999 and in 2003 and found that Brown did engage in sexual harassment towards Marquis[3], and recommended a disciplinary letter of reprimand, Brown's attendance at a sexual harassment awareness and prevention course, and stated that if future harassment occurred, "progressive and severe discipline should be imposed upon Mr. Brown." (A-38). Mr. Harrington ultimately proposed a more severe penalty than Coleman recommended--a three day suspension without pay (A-28)--but Brown appealed this penalty and, following a grievance hearing, the penalty was reduced back to the original recommendation of a letter of reprimand (A-31-32). The hearing officer cited in mitigation "the level/degree" of the conduct and the fact that Brown had no prior disciplinary record of similar misconduct. (A-32).

Plaintiff filed a charge of discrimination with the EEOC/Delaware Department of Labor on or about December 15, 2003. (A-61). In this charge, plaintiff alleged that Brown "lingered outside her office" on or about November 24, 2003. (A-61; 59-60). DSCYF records showed Brown was not on duty that day or the weekend before. (A-59-60).

---

3  It is unclear from this document which event(s) Coleman was referring to in the substantiation finding, however, it appears most likely that the reference was to the 1999 events as, during the investigation, Brown himself admitted that his conduct in 1999 may have constituted sexual harassment. (A-37).

The next pertinent document in the records is an email from plaintiff to Harrington and her new supervisor, Shirley Bryson, dated June 17, 2004.[4] In this email, plaintiff reports a "series [although she only describes one incident] of aggressive/intimidating behavior by Mike Brown" toward her the past week. (A-54). The email claims that, on June 14, 2004, Brown was searching people entering the building with a metal detector. When plaintiff entered the area, Brown yelled at her to "get out of here," in an inappropriate tone of voice. Plaintiff states that when she was allowed to enter the search area again, Brown had a female perform the wand duties. (A-54).

Again, employer responded promptly. Shirley Bryson sent an email to Coleman, Harrington and Karen Smith the same day, stating that she had spoken with plaintiff about this incident and she and Harrington would be speaking to Mr. Brown later that day about plaintiff's concerns. (A-54). After the meeting, Harrington followed up with Brown by email, reminding him that he must keep any interactions with plaintiff professional:

> Per our meeting today, you must ensure you tone of voice is professional and appropriate; also if you have any interactions with Dr. Marquis, they must and will be on a professional level.

(A-30).

Finally, defendant's records contain an August 3, 2004 email from plaintiff to Norwood Coleman, the EEO officer. In that email, plaintiff states "the training you provided a few months ago on sexual harassment has made a noticeable impact on the YRC's [Brown's] behavior toward me…so this is proof that training can have a positive influence.

---

4  No complaints or allegations of harassment after April, 2003 are mentioned by Plaintiff in the instant Complaint, filed on July 19, 2005. The 2004 events above are included by defendant solely for purposes completeness in discussing employer's records.

It is of comfort that several of the larger offenders[5] have stopped treating me like a piece of meat…all after that one training from you.  I've been meaning to tell you about the positive difference your training made...Thank you for all of your help!"  (A-55).

## 4. Other remedial action offered to plaintiff, which was declined.

As a result of plaintiff's inability to tolerate even the most incidental interactions in the workplace with Mr. Brown, plaintiff and her managers explored the possibility of a lateral transfer of plaintiff to another DSCYF facility, in order to avoid any contact with Mr. Brown.  (A-70-71).  Two such child psychologist positions became available in 2004—a position at Ferris School and a newly created position for two new programs at DSCYF--and plaintiff was placed on the certification list for each.  (A-56; 62-69).  Plaintiff interviewed for one position on October 13, 2004.  She was actually selected to fill this position, but declined it.  (A-66; 68).  For the second position, plaintiff was scheduled for an interview on November 19, 2004, but subsequently declined the opportunity to interview.  (160).  *See also* (A-56).

---

5  Plaintiff never complained about anyone other than Brown to her employer, nor does she make such allegations in this case.

**ARGUMENT**

I.  **SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF DEFENDANT AS TO COUNTS I AND II, AS THERE IS NO EVIDENCE WHATSOEVER IN THE RECORD TO SUPPORT PLAINTIFF'S ALLEGATIONS OF GENDER DISCRIMINATION; PLAINTIFF FAILS TO STATE A CLAIM FOR "RETALIATION" AS A MATTER OF LAW; CLAIMS FROM 1999 WOULD BE BARRED BY THE STATUTE OF LIMITATIONS, AND THE RECORD CONTAINS NO EVIDENCE OF ANY ILLEGAL OR DISCRIMINATORY CONDUCT ON THE PART OF DEFENDANT.**

A.  **Standard of Review.**

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment and judgment shall be entered forthwith, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

Summary judgment is barred only if the dispute of material fact is "genuine", meaning "such that a reasonable jury could return a verdict for the nonmoving party" on the issue. Id. The moving party (Defendant, here) may satisfy the requirements of Rule 56(c) by showing the Court that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). That showing is amply made herein.

It is especially important in this case, in which no discovery has been conducted, to note that in response to a motion for summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, . . . [but] must set forth *specific fact*s that indicate a genuine material issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). A non-moving party does not meet its responsive burden, and may not successfully oppose a summary judgment motion, by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit. Bequeath v. L.B. Foster Co., 367 F.Supp.2d 779, 784 (W.D. Pa. 2005), *citing* Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990). If the nonmoving party cannot make this showing, with reference to actual facts of record, the moving party is entitled to judgment as a matter of law. F.R.C.P. 56(c).

B.    **There is No Evidence In The Record to Support Plaintiff's Allegations of Gender Discrimination or "Retaliation" for Reporting an Alleged Title VII Violation.**

Whether alleged conduct rises to the level of a hostile work environment is a question of law that may be decided on a summary judgment motion. Blankenship v. Parke Care Centers Inc., 913 F.Supp. 1045, 1051 (S.D. Ohio 1995), *aff'd* 123 F.3d 868 (6th Cir. 1997), *cert. denied*, 522 U.S. 1110 (1998). In this case, in Counts I and II, plaintiff has alleged (1) gender discrimination/hostile work environment in violation of Title VII (42 U.S.C. §2000e-2) and (2) "retaliation" for plaintiff's alleged complaints of discrimination (42 U.S.C. §2000e-3). On the record in this case, to which plaintiff has contributed nothing by way of discovery, plaintiff cannot meet the elements of proof as to either her discrimination or retaliation claim as a matter of law.

Plaintiff's complaint alleges sexual harassment by a co-worker, Michael Brown,

which, according to plaintiff, created a hostile work environment. The Third Circuit has established the following test--all five prongs of which must be met by plaintiff--to maintain a claim for co-worker hostile work environment:

1) the employee [must show she] suffered intentional discrimination because of [her] sex;

2) the discrimination was pervasive and regular[6];

3) the discrimination detrimentally affected the plaintiff;

4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; **and**

5) [plaintiff must demonstrate] the existence of *respondeat superior* liability [of employer].

Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001); Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990). As part of this analysis, a reviewing court will also look at factors such as the frequency of the discriminatory conduct; its severity; "whether it is physically threatening or humiliating, or a mere offensive utterance"; and whether it unreasonably interferes with an employee's work performance. Weston, *supra*, *citing* Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993). For the reasons discussed below, even viewing the record in the light most favorable to plaintiff, plaintiff cannot, as a matter of law, meet her burden of proof as to prongs 2, 4 and 5 of the Weston/Andrews test above.

Nor can plaintiff prevail, as a matter of law, on her claim of "retaliation" under Title VII. 42 U.S.C. §2000e-3 prohibits discrimination against any employee who has made a charge of or opposed a Title VII unlawful employment practice in the workplace. The merits

---

6  In later cases, the Third Circuit has modified this prong to use the "severe and pervasive" terminology

of her claims aside, Plaintiff did report allegations of coworker harassment/hostile work environment to her employer. She cannot, however, prevail upon a claim of "retaliation" for making such charges, as her complaint fails to state a claim under §2000e-3 as a matter of law, and there is no evidence in the record to support such a claim. The Third Circuit has very recently re-articulated the burden of proof for Title VII retaliation. To establish a *prima facie* case of retaliation, a plaintiff must produce evidence meeting all three prongs of the following test:

1)  she engaged in activity protected by Title VII;

2)  the employer took an adverse employment action against her; and

3)  there was a causal connection between her participation in the protected activity and the adverse employment action.

Moore v. City of Philadelphia, ___ F.3d ___, 2006 WL 2492256 (3d Cir. 2006). The U.S. Supreme Court in Burlington Northern & Santa Fe Ry. Co. v. White, 126 S.Ct. 2405 (2006) recently clarified that the second prong of the test ("adverse employment action") should be read more broadly than "adverse employment action" in the substantive Title VII discrimination provision (§2000e-2) to encompass adverse actions that go beyond "employment related retaliatory acts and harm," to include other acts that might "dissuade a reasonable worker from making or supporting a charge of discrimination." 126 S.Ct. at 2415. As discussed herein, plaintiff cannot make out a *prima facie* case of "retaliation" as there is no evidence whatsoever that *any* adverse action was taken against her.[7] Failing to meet prong 2 of the test, prong 3 becomes moot.

---

articulated by the U.S. Supreme Court. *See* EEOC v. Foodcrafters Distribution Co., 2006 WL 489718, Slip. Op. (3d Cir. 2006) at n. 6.

[7] As discussed further herein, plaintiff's Count II must be dismissed on the face of the pleadings for failing to exhaust EEOC administrative remedies and failing to state a claim of Title VII retaliation.

**1. The discovery period has closed and plaintiff has failed to conduct any discovery in this case. Plaintiff has also failed to respond to interrogatories and requests for production propounded by Defendant, seeking details as to the nature and basis of plaintiff's claims; accordingly, plaintiff is be barred from introducing such evidence or witnesses, if any, in responding to this motion, or at trial, pursuant to F.R.C.P. 37(c)(1).**

The Court issued its scheduling Order on January 12, 2006 and ordered that the discovery cut-off for this case was to be September 1, 2006. (D.I.6) (A-19-21). That date has come and gone. Defendant timely filed its initial disclosures on February 7, 2006. (D.I. 8) (A-22-27). Defendants' disclosures included production of DSCYF personnel files for both plaintiff and Michael Brown, as well as emails that had been exchanged concerning plaintiff's complaints. Referenced portions of this production are made part of the Appendix to this brief.

Defendants served, on March 14, 2006, a set of interrogatories directed to Plaintiff. (D.I. 9) (A-73). These interrogatories demanded, *inter alia*, the complete factual basis and names of witnesses as to each allegation made; details of each and every complaint of workplace harassment; contacts with Michael Brown, including details of all alleged "leering" and threats; usage and outcome of remedies offered by employer; details of alleged protected "speech"; details of alleged injuries; identification of all health care providers, including those who treated plaintiff relative to her emotional/psychological claims. These interrogatories were never responded to, nor did plaintiff file her initial disclosures, despite repeated requests from defense counsel for this information. (See A-102-06)

Defendants simultaneously served, on March 14, 2006, requests for production directed to Plaintiff. (D.I. 10) (A-91). These requests demanded, *inter alia*, production of all relevant documents, including notes, diaries, employment documents, complaints and

medical records.  As with the interrogatories, these requests for production were never answered, despite defense requests to do so.  They were simply ignored.

Throughout the eight months allotted for discovery by the Court, plaintiff (who has been represented by counsel throughout this litigation) failed to affirmatively conduct any discovery whatsoever, and failed to respond to Defendant's written discovery requests. Plaintiff took no depositions and issued no interrogatories or requests for production or admissions.  Plaintiff's sole contribution to the "record" was the service of plaintiff's bare-bones initial disclosures on July 6, 2006 (D.I. 12) (A-107), five months beyond the Scheduling Order deadline of February 7, 2006.  (D.I. 6, ¶1) (A-19).  These responses were apparently prompted at this point by a third letter request from defense counsel dated June 20, 2006.  (A-105-06).  Plaintiff's initial disclosures, once filed, were incomplete under Rule 26(a)(1), as they failed to identify the subjects for which the named witnesses had information, and did not produce any of the referenced documents, which plaintiff claimed included "emails between the plaintiff and DHSS employees" and "documents...complaining of the sexual harassment alleged in this matter."  (A-107-111).

The "record" for purposes of summary judgment consists of "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any."  F.R.C.P. 56(c).  Thus, the record in this case consists solely of the pleadings and initial disclosures, which include the documentary record produced by Defendant.

A party who fails to engage in discovery does so at their own risk.  F.R.C.P. 37(c)(1) provides that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1)...*is not*, unless such failure is harmless, *permitted to use as evidence* at trial, at a hearing, or *on a motion* any witness or information not so disclosed...(emphasis added).

Plaintiff, having conducted no discovery during the eight months allotted by the Court's Order, is not now permitted to add to the record at this late date. Rather, she is bound by her apparent election not to pursue discovery. Furthermore, the language of Rule 37(c)(1) makes clear that plaintiff cannot introduce evidence (including affidavits) that would have been responsive to the written discovery propounded by defendant in this case, which was never responded to.

Nor can plaintiff attempt to broaden or bolster her allegations beyond the pleadings via an affidavit of her own. Such action would run afoul of Rule 37(c)(1), as details supporting plaintiff's complaints and allegations were specifically requested in Defendant's interrogatories, and were never provided. "A non-moving party may not successfully oppose a summary judgment motion by resting upon mere allegations or denials contained in the pleadings, or by simply reiterating those allegations or denials in an affidavit." Bequeath v. L.B. Foster Co., 367 F.Supp. 2d 779, 784 (W.D. Pa. 2005)(*citing* Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990)). "Rather, the non-moving party must offer specific evidence found *in the record* that contradicts the evidence presented by the movant and indicates that there remain relevant factual disputes that must be resolved at trial. [] If the non-moving party does not respond in this manner, the court, when appropriate, *shall grant* summary judgment." Id (emphasis added)(also citing F.R.C.P. 56(e)).[8]

---

8 While Defendant believes that summary judgment is the appropriate disposition of this case, courts have even dismissed complaints for a plaintiff's total failure to pursue his claims. "In the case of court-imposed deadlines, repeated failure to observe court-imposed deadlines and total failure to pursue a claim beyond the pleadings may constitute willful conduct [justifying dismissal]." Roman v. City of Reading, 121 F.Appx. 955, 2005 WL

Plaintiff, on the record that is properly before the Court, cannot point to any evidence which demonstrates a genuine issue of any material fact, or which would support the necessary elements of her *prima facie* case. Liability aside (which is discussed in detail, *infra*), plaintiff is obliged to plead and prove damages. Plaintiff pleads "compensatory damages, including any lost wages, and [] her pain, suffering...and other personal injuries."[9] (D.I. 1). Plaintiff has not claimed any lost time from work as a result of the alleged conduct and, indeed, her records reflect no lost wages. Plaintiff has never alleged physical injury. Her only allegation is of "mental suffering, pain and discomfort." Id, ¶25. Proof of "mental" injuries and their causation require testimony by a qualified [medical] expert witness. F.R.E. 702. *See also* Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

Plaintiff cannot, on the "record" before the Court, possibly prove (or demonstrate any dispute of material fact as to) her alleged injuries, as she has failed to identify or produce any report from a qualified expert that would document or support her claims of mental injury. Plaintiff has produced no medical records documenting treatment (if any), and no expert opinion documenting causation. Identification of experts and production of their written opinions are mandatory pre-trial disclosures, pursuant to F.R.C.P. 26(a)(2). This requirement was also ignored by plaintiff. The Court's scheduling order set June 1, 2006 as the deadline for [plaintiff's] expert reports.[10] Plaintiff failed to comply with this Order and is now barred from introducing expert evidence. F.R.C.P. 37(c)(1). Thus, as with liability, since the record demonstrates that plaintiff could not prove an essential element of her case—damages—

---

332416 (3d Cir. 2005).

9 Plaintiff did not plead punitive damages and such damages are not available against a State defendant, in any event, under Title VII.

10 "Rebuttal" [Defendant's] expert reports would have been due on July 30, 2006 but, of course, as plaintiff produced no report, there was no need for Defendant to obtain an expert opinion in rebuttal.

defendant is entitled to summary judgment on this issue.

### 2. Count II: Plaintiff fails to state a claim for Title VII "retaliation."

Count II of plaintiff's complaint, alleging retaliation under 42 U.S.C. §2000e-3, is easily disposed of. As a preliminary, and dispositive matter, plaintiff's EEOC charge was filed only as to a charge of Title VII "Discrimination" and not "Retaliation." (A-61). The charge was never amended to include a claim of retaliation. Accordingly, plaintiff has not exhausted her mandatory EEOC administrative remedies under Title VII as to her "retaliation" claim, and therefore cannot maintain a lawsuit as to that claim in this Court. 42 U.S.C. §2000e-5; 29 C.F.R. §1601.2*ff*.

Furthermore, plaintiff's complaint, on its face, fails to properly plead the elements of this cause of action. The only allusion to "retaliation" in Plaintiff's complaint occurs at paragraph 24, and relates only to Count III—plaintiff's purported "First Amendment"/§1983 claim. Plaintiff states that "in retaliation for the matters of public concern, about which plaintiff made comments[11], the defendant has failed to take appropriate actions to protect her from the harassment of the perpetrator described herein." Thus, plaintiff has alleged that whatever "retaliation" occurred was taken because of her speech on matters of public concern; not because of her reports of alleged sexual harassment.

In conclusory fashion, plaintiff also, at paragraph 29 (her claim for relief under §2000e-3), states that defendant "fail[ed] to protect the plaintiff from the intimidation and harassment of the perpetrator" in retaliation for her claims of discrimination (sexual harassment). This circular reasoning does not state a claim for Title VII retaliation; rather it

---

11  These allegations, which find no support in the record, refer to statements plaintiff allegedly made about safety of juveniles in the facility, in 2003 and 2005-issues having nothing to do with Michael Brown. D.I. 1, ¶¶ 20-23) (A-4).

is just an elaboration of Plaintiff's underlying sexual harassment claim (§2000e-2). Plaintiff is essentially saying "I was harassed and because I complained about it, employer let the harassment continue." This is just another way of saying employer did not properly respond to plaintiff's complaints of sexual harassment in the first place. This is a standard claim of "unlawful employment practice" under Title VII (42 U.S.C. §2000e-2), not a separate claim of retaliatory "discrimination for making charges" (42 U.S.C. §2000e-3). In other words, all of plaintiff's purported Title VII violations would fall under Count I ("Discrimination"). Plaintiff's complaint also could not, on its face, state a cause of action for any Title VII "retaliation." The complaint fails to meet even a notice pleading standard as to *who* retaliated against plaintiff; *how* they retaliated (prong 2 of <u>Moore</u>, *supra*); *when* they retaliated and *why*/in response to what (prong 3 of <u>Moore</u>, "causal connection"). For all of these case-dispositive reasons, summary judgment must be granted as to Count II.

### 3. Count I: The evidence of record rebuts Plaintiff's claims, and shows that the Defendant employer took prompt, remedial action to every single one of plaintiff's complaints (even those which were *de minimis*) such that no reasonable jury could return a verdict in her favor on Count I, gender discrimination.

It is well settled that "to demonstrate entitlement to summary judgment, the moving party is not required to refute the essential elements of the cause of action. The moving party needs only to point out the absence or insufficiency of the evidence offered in support of those essential elements." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Defendant has demonstrated that, given plaintiff's election not to pursue discovery in this case, she has not made a record by which she could prove the essential elements of her claim. Moreover, the record that does exist further compels summary judgment in this case, as it clearly <u>negates</u> the presence of the essential elements of plaintiff's alleged causes of action and

shows that no reasonable jury could impose liability on defendant in this case.

Defendant is entitled to summary judgment as to Count I, a claim of gender discrimination pursuant to 42 U.S.C. §2000e-2. The incidents which plaintiff claims constitute actionable sexual harassment do not rise to that level as a matter of law for several reasons. As discussed herein, there is no evidence in the record that any of the alleged "harassment" was serious and pervasive. The 1999 incidents are barred from consideration due to expiration of the statute of limitations. As a matter of law, the incidents in and after 2003 do not pass the "objective person" part of the Weston test, *supra*. Those incidents were simply *de minimis* and incidental social interactions which would not have "detrimentally affect[ed] a reasonable person of the same sex in [plaintiff's] position." Weston, *supra*, 251 F.3d at 426. Finally, and perhaps most fatal to her claims, plaintiff cannot demonstrate liability on the part of defendant/employer DSCYF, because the employer promptly responded to and took remedial action to each and every one of plaintiff's complaints, even the *de minimis* ones. The record shows that DSCYF went above and beyond its legal obligations in an effort to make the plaintiff (whom the record reveals as hypersensitive to *any*, even normal, incidental, contact with Michael Brown) comfortable in her workplace.

### a. Plaintiff's claims of alleged harassment/hostile work environment in 1999 fail to state a claim for hostile work environment and, in any event, are barred by the statute of limitations.

As outlined above, plaintiff's issues with her co-worker, Michael Brown, began in mid-July 1999 when, she claims, Brown made offensive remarks in the nature of sexual propositions and engaged in inappropriate conduct towards her in the workplace. (A-44). Plaintiff, almost immediately, both made clear to Mr. Brown that his attentions were not

desired and complained to her then-supervisor.  Defendant agrees that at least some of Brown's conduct, as alleged by plaintiff, could be viewed, and was viewed by plaintiff as offensive.  However, the record shows that plaintiff's supervisor took prompt, remedial action by scheduling a meeting with plaintiff and Mr. Brown on August 4, 1999, the very next day after plaintiff complained to him.  (A-45).  While plaintiff claims she was not satisfied with the results of the meeting because Brown denied the allegations, and she felt that the supervisor was "siding" with Brown, plaintiff, in her own written version of events, admits that she failed to pursue the next avenue of relief—speaking with DSCYF's EEO officer, Norwood Coleman.  (A-47).  While plaintiff says that this was because she was "afraid for her job," there is no evidence in the record whatsoever to suggest that Coleman or any superior to her supervisor would not have been responsive.  Plaintiff, who had signed a memorandum one month earlier, attesting to her awareness of Employer's anti-discrimination policies and grievance procedures, simply did not make the effort to avail herself of the many administrative remedies Defendant offered to her.  (A-72A-72B).

Plaintiff's own written version of events contains no other claims of harassment by Brown in 1999 or 2000.  Plaintiff even concedes that when Brown was moved to the night shift in mid-2000, she "had relatively little contact with him....It was more pleasant for me...." (A-47).  The record (which as to this issue is plaintiff's own version of events) reveals no further incidents after the August 4, 1999 meeting with plaintiff's supervisor.  Thus, employer's remedial action had the desired effect, and Brown's subsequent transfer to the night shift had the added benefit of removing him almost entirely from contact with plaintiff.

It is undisputed that plaintiff did not file an EEOC (or any other) complaint as to the 1999 incidents; in fact, she "was not thinking of filling out a sexual harassment complaint" at

22

the time.  (A-46).  Under Title VII, in order to ultimately file suit in federal court, a complainant must file a charge with EEOC within 300 days of the alleged unlawful employment practice (act of discrimination).  29 C.F.R. §1601.93.  According to plaintiff's version of events, the last reported incident of harassment in 1999 took place on July 31, 1999 (the "metal detector incident").  The EEOC charge that gave rise to this Complaint was filed with the Delaware Department of Labor on December 15, 2003 (A-61), obviously several years after the 300-day deadline for the 1999 events had elapsed.  Thus, plaintiff fails to state a claim for relief under this Title VII complaint for hostile work environment, if any, arising out of the 1999 events, due to failure to exhaust her administrative remedies.

In addition to the time bar, plaintiff fails to meet the second prong of the Weston/Andrews test for hostile work environment, in that she cannot demonstrate that the harassment was "severe and pervasive," such that it amounted to a detrimental change in the terms of employment.  While Brown's behavior was admittedly improper, it consisted (as reported by plaintiff) solely of several vulgar comments, "leering," and the one "metal detector incident," all of which occurred over an approximately two-week period and then stopped.  (A-44).  Under the caselaw, such isolated conduct does not state a claim for actionable harassment.

"Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).   The Supreme Court has cautioned that Title VII is not intended to be a "general civility code" for the workplace.  Id. "Properly applied, [Title VII] will filter out complaints attacking 'the ordinary tribulations of the workplace, such as the *sporadic use of abusive language*, gender-related jokes, and

23

occasional teasing.' [citation omitted] We have made it clear that *conduct must be extreme to amount to a change in the terms and conditions of employment*, and the Courts of Appeals have heeded this view." <u>Id</u> (emphasis added).

For instance, severe and pervasive conduct was found in <u>Faragher</u>, *supra*, where the allegations included that a male supervisor constantly made lewd and demeaning remarks to plaintiff and other women; told plaintiff "date me or clean the toilets for a year," touched plaintiff's buttocks and even "tackled her." There was evidence of similar and worse conduct by the same supervisor to other women in the workplace. 524 U.S. at 780-82. *Compare* <u>Shramban v. Aetna</u>, 115 Fed. Appx. 578, 2004 WL 2504364 (3d Cir. 2004)(upholding grant of summary judgment for defendant where allegations were that *supervisor* made comments like "there is only one way to tell [if one is] a natural blonde," made inappropriate contact with plaintiff's hands, and made comments about her personal life and appearance). While the Court found that the comments in <u>Shramban</u> were "boorish" and inappropriate, they were not found to be severe enough to state an actionable claim for hostile work environment, nor did the Court find that they would have detrimentally affected a "reasonable" plaintiff. On the record presented, it is clear that Brown's 1999 conduct fell within the realm of inactionable "sporadic abusive language" or boorish behavior (at most), and did not constitute the sort of "extreme" conduct, such as that in <u>Faragher,</u> required to maintain a Title VII claim.

Finally, plaintiff could not, as a matter of law, demonstrate any liability on defendant as to the 1999 conduct. A plaintiff alleging co-worker harassment "must demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action." <u>Weston,</u>

*supra*, 251 F.3d at 427.  Rather, in this case, when plaintiff reported concerns, employer took immediate action by scheduling a meeting with plaintiff and Brown to address those concerns.

Plaintiff's failure to timely file an EEOC complaint as to the "1999 events" is, of course, fatal to her attempt to rely on those events in this case.  Moreover, even viewing the record in the light most favorable to plaintiff, there is no evidence by which plaintiff could meet the necessary burdens of proving either that the conduct was severe and pervasive, or that employer failed to take prompt, remedial action to address it.

> **b.  There was no "continuing course of conduct" for purposes of Title VII as Plaintiff reported no harassment following the 1999 events until March 2003.**

Plaintiff, in the EEOC charge filed in December 2003, claimed that the alleged discrimination constituted a "continuing action" relating back to 1999.  (A-61).  This claim is legally without merit.  The "continuing violation" theory under Title VII allows, in certain cases, for plaintiff to introduce evidence of conduct which began prior to the filing period when there is an "ongoing pattern or practice of discrimination" by the employer.  *See* West v. Philadelphia Electric Co., 45 F.3d 744, 754 (3d Cir. 1995).  The "continuing violation theory" is an "equitable exception" to the Title VII statute of limitations.  Id.

It is the plaintiff's burden to show that a "continuing violation" has occurred, and she must demonstrate two things.  The Third Circuit has described the first prong as "[t]he crucial question of whether any *present* violation exists."  West, 45 F.3d at 754 (emphasis in original).  Secondly, the plaintiff must show that the alleged harassment is "more than the occurrence of isolated or sporadic acts of intentional discrimination."  Id at 755 (citation omitted).  The critical distinction, the Court held, is between the occurrence of "isolated,

intermittent acts" (which do not trigger the continuing violation theory) and "a persistent on-going pattern" (which does). <u>Id</u>. In this case, plaintiff fails the "crucial" first prong of the <u>West</u> analysis in that, for the reasons described at §B(3)(c), below, she cannot show evidence that any "present" actionable violation (timely when she filed her 2003 EEOC charge) existed. The acts plaintiff complained of, which occurred in 2003 were *de minimis*, non-harassing workplace interactions with Mr. Brown, which would not have adversely impacted a reasonable plaintiff. Furthermore, employer took prompt, remedial action to each of plaintiff's complaints. Thus, there was no "present" violation at the time plaintiff invoked her Title VII remedies in 2003, and the continuing violation theory cannot apply.

Plaintiff also fails the second prong of the <u>West</u> test, in that, assuming *arguendo* that each of Michael Brown's complained-of actions constituted "harassment," the acts constituted isolated and intermittent events (vulgar remarks and one incident in 1999, and then Brown's innocuous remarks in 2003 (asking her if she made the pie at a birthday celebration, saying "Hi, Doc," and asking her if a fax was hers)), and not "a persistent on-going pattern" of conduct. The record reveals no reported incidents between August, 1999 and March 2003. Employer cannot, of course, be held liable for incidents (if any) which were not reported to it, and of which it was unaware. *See* <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998); <u>Weston</u>, *supra*, 251 F.3d at 427. The span of almost 4 years between the alleged acts of harassment demonstrates that they were clearly "isolated and intermittent." Plaintiff cannot demonstrate a "continuing violation," and would therefore be unable to rely on the 1999 events in this case.

**c. Plaintiff's allegations of alleged "harassment" in 2003 and 2004 fail, on their face, to rise to the level of a Title VII violation, as the interactions between plaintiff and her co-worker were incidental, non-harassing events and simply reflect *de minimis* subjective annoyances to plaintiff.**

As noted above, plaintiff must, as a threshold starting point, state a claim for discrimination under Title VII in order to avoid summary judgment, and that claim must have been timely when she filed her charge with the EEOC. As the charge in this case was filed on December 15, 2003, plaintiff must have stated a violation of Title VII occurring within 300 days of when she filed. The acts of alleged harassment during this time period consisted of what plaintiff termed "forced friendliness" in the workplace by Mr. Brown, when he was moved to a day shift in late March, 2003 and their work hours overlapped such that he would occasionally be in the vicinity of her office. Plaintiff cites, as examples of this new "harassment," incidents such as Brown asking for help on the computer, and Brown walking in on a co-worker's birthday lunch at work, saying "I want to be part of this" and asking plaintiff if she had made the pie. Plaintiff complained that the mere presence of Brown near her offices is "offensive to her." (A-58). While in her EEOC charge, plaintiff claimed that after a meeting with employer on April 11, 2003—a meeting held specifically to address her concerns--"Mr. Brown continued his *severe intimidation* and *sexual harassment* of me," (emphasis added) the record shows no support for such a claim.

After the meeting, plaintiff made a complaint by email to her supervisor on April 23, 2003, stating that on that morning, in a public office area, Brown asked her "How are you doing, Doc?," as well as unlocking a door for her as she exited the hallway. (A-53). On May 6, 2003, plaintiff sent another email to her supervisor, Mr. Harrington, stating that Brown had made a comment to her about an error on a report and asking her if a document

on the fax machine belonged to her. (A-52). Such actions hardly constitute the "*severe intimidation* and *sexual harassment"* plaintiff claims. On May 7, 2003, plaintiff turned in a formal internal affirmative action complaint form to employer's EEO officer. The final incident noted in Defendant's files is a June 17, 2004[12] email from plaintiff to her supervisors, in which plaintiff reported "aggressive/intimidating behavior by Mike Brown" toward her the past week. (A-54). The email claims that, on June 14, 2004, Brown was searching people entering the building with a metal detector (apparently as part of his duties). When plaintiff entered the area, Brown yelled at her to "get out of here," in an loud voice. Plaintiff states that when she was allowed to enter the search area again, Brown had a female perform the wand duties. (A-54). As discussed more fully below, employer responded to each and every one of plaintiff's complaints immediately, and even exceeded their remedial obligations under the law, in an effort to assist plaintiff.

As discussed above, the Third Circuit's <u>Andrews</u> test requires that plaintiff demonstrate all of the following:

1) the employee [must show she] suffered intentional discrimination because of [her] sex;

2) the discrimination was pervasive and regular[13];

3) the discrimination detrimentally affected the plaintiff;

4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and

5) [plaintiff must demonstrate] the existence of *respondeat superior* liability [of employer].

---

12  The June 2004 incident is not properly before the Court, as it was not alleged by plaintiff in her July 19, 2005 complaint.

13  In later cases, the Third Circuit has modified this prong to use the "severe and pervasive" terminology articulated by the U.S. Supreme Court. *See* <u>EEOC v. Foodcrafters Distribution Co.</u>, 2006 WL 489718, Slip. Op. (3d Cir. 2006) at n. 6.

895 F.2d at 1482.

Defendant will assume solely for the sake of argument that Brown's 2003-2004 behavior toward plaintiff was based on her sex (prong 1); Defendant will further agree, *arguendo*, that the discrimination subjectively detrimentally affected plaintiff (prong 3). However, even assuming these two parts of the test would be met, the record is void of any evidence whatsoever that "the discrimination was severe and pervasive" (prong 2); or that "the discrimination would detrimentally affect a reasonable person of the same sex in [plaintiff's] position" (prong 4), or that defendant, DSCYF, bears any *respondeat superior* liability in this matter (prong 5).

Not every workplace act which aggrieves or insults a plaintiff will rise to the level of "severe and pervasive" harassment required to maintain a Title VII claim.  As discussed above, Title VII is not meant to be a "general civility code" to address "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'"  EEOC v. Foodcrafters Dist. Co., 2006 WL 489718, Slip. Op., (3d Cir. 2006) at p.8 (*citing* Faragher, *supra*, 524 U.S. 775).  A court will also look at the frequency of the conduct, its severity; "whether it is physically threatening or humiliating, or a mere offensive utterance;" and whether it unreasonably interferes with an employee's work performance.  Weston, *supra*, *citing* Harris v. Forklift Sys. Inc., 510 U.S. 17, 23 (1993).

Severe and pervasive harassment was demonstrated and summary judgment was deemed inappropriate in Foodcrafters, as the record contained evidence, in the form of witness and plaintiffs' testimony, that the workplace in that case was "*regularly permeated* with sexual comments by employees and supervisors"; sexual incidents "were a *daily*

*occurrence*, unaddressed by [] supervisors"; sexual comments were "*all you heard all day*." Foodcrafters at p.9 (emphasis added).  Similarly, the Supreme Court found that one might make out a case of severe and pervasive harassment where the evidence showed that a company president frequently insulted female plaintiff making comments such as calling her a "dumb ass woman," suggesting they go to a motel to negotiate her raise, and throwing objects on floor in front of female employees and asking them to pick them up.  Harris v. Forklift Systems, *supra*, 510 U.S. 17, 23 (1993). Even on these facts, the High Court did not disagree with the District Court's opinion that this was a "close case." Id.  *See also* cases discussed at §I(B)(3)(a), *supra*.

Plaintiff's description of several workplace contacts in April 2003 in which Michael Brown (1) asked her for computer help; (2) joined a birthday lunch and asked if she made the pie; (3) said "how are you doing" and unlocked a door for plaintiff; and (4) asked if a fax was hers, could not—by any stretch of the imagination---rise to the level of the type of "severe and pervasive" workplace harassment that Title VII was meant to remedy, and pales almost into invisibility when compared to the conduct described in Faragher, Harris and Foodcrafters.  While clearly subjectively annoying to plaintiff, her *de minimis* workplace interactions with Mr. Brown were—at most—in the nature of "ordinary tribulations of the workplace" or "mere offensive utterances" rather than actionable harassment.  Accordingly, she cannot meet prong 2 of the Andrews test and summary judgment is appropriate.

Nor can plaintiff demonstrate that the actions she complains of would "detrimentally affect a reasonable person."  The record reveals that plaintiff was hypersensitive to any interactions with Mr. Brown.  Thus, at most, she can prove she was subjectively affected. But, plaintiff is also obliged to show that the acts complained of are offensive by an *objective*

standard—that is, that they would "detrimentally affect a reasonable person" in plaintiff's position. <u>Andrews</u>, *supra*. Plaintiff cannot make this showing.

Title VII "forbids only behavior *so objectively offensive* as to alter the 'conditions' of the victim's employment." <u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 81 (1998)(emphasis added)(same sex harassment including repeated physical threats and assault). "Conduct that is not severe or pervasive enough to create an *objectively hostile* or abusive work environment-an environment that a *reasonable person would find hostile or abusive*-is beyond Title VII's purview." <u>Id</u>. Consideration must be given to the social context and the nature of the workplace under consideration (*e.g.* an office vs. a locker-room). <u>Id</u>.

Again, a comparison with the caselaw and common sense compels the conclusion that Mr. Brown's routine workplace comments (computer; fax machine); greeting ("how are you doing"), and comments about the birthday party would not be acts that a "*reasonable person would find hostile or abusive.*" Plaintiff may have been personally offended by these interactions, but that is merely a subjective inquiry. She cannot, as a matter of law, meet the "objectively offensive" prong of <u>Andrews</u>. Accordingly, Title VII provides no remedy. Plaintiff cannot meet her burden as to this factor and, for this reason also, Defendant is entitled to summary judgment on the Title VII discrimination claim.

> **d. Moreover, even notwithstanding the insubstantial nature of the complaints in 2003 and 2004, employer took appropriate and prompt remedial action.**

Finally, defendant is entitled to summary judgment because the record shows that every single complaint ever reported by plaintiff (even the *de minimis* ones) was promptly addressed by DSCYF. Therefore, plaintiff can point to no evidence in the record which

would demonstrate any liability on the defendant/employer for Michael Brown's actions, thereby failing prong 5 of the <u>Andrews</u> test.  After plaintiff reported concerns about Brown's impending shift change in the spring of 2003, her supervisor, Mr. Harrington, told her not to worry and to advise him of any problems.  (A-48).  Once the shift change occurred, and *before plaintiff had even complained,* Harrington, noticing plaintiff's apparent discomfort around Brown, affirmatively suggested a meeting, with himself, plaintiff and Brown, to discuss concerns.  That meeting took place on April 11, 2003.  (A-48-49).  Plaintiff herself acknowledged employer's prompt response (the meeting) in her complaint.  (D.I. 1, ¶16)(A-3).

When plaintiff subsequently complained by email to Harrington on Wednesday, April 23, 2003, about the "how are you doing?" remark/door opening (what she termed Brown's "forced friendliness"), Harrington *that same afternoon*, immediately responded to plaintiff and copied Karen Smith, DSCYF Human Resources, suggesting that plaintiff make an appointment with Norwood Coleman, the EEO director, and stating that he (Harrington) "w[ould] talk to Mr. Brown about his forced friendliness."  (A-40).  Coleman responded immediately on Thursday, April 24th, asking plaintiff to call him at home if necessary.  An appointment between plaintiff, Coleman and Karen Smith was scheduled for the next day, April 24, 2003, but was postponed to May 12th due to Coleman's illness on the original date.  (A-39).

Upon submission of plaintiff's internal affirmative action complaint forms to the employer on May 7, 2003  (A-42-51), DSCYF's Affirmative Action office proceeded to conduct an investigation into all of plaintiff's complaints about Brown, even reaching back to 1999, and Norwood Coleman issued a written report and recommendations on September 23,

2003.[14]  (A-35-38).  The employer substantiated Marquis' complaints, and recommended a disciplinary letter of reprimand, Brown's attendance at a sexual harassment awareness and prevention course, and stated that if future harassment occurred, "progressive and severe discipline should be imposed upon Mr. Brown." (A-38). Mr. Harrington ultimately proposed a penalty which was even more severe than that recommended by the internal review--a three day suspension without pay.  (A-28).  Brown, however, appealed this discipline and, following a grievance hearing, the penalty was reduced back to the original recommendation of a letter of reprimand (A-31-32).

As to the "yelling" incident in June 2004, again, employer could not have responded more promptly.  Shirley Bryson sent an email to Coleman, Harrington and Karen Smith the same day, stating that she had spoken with plaintiff about this incident and she and Harrington would be speaking to Mr. Brown later that day about plaintiff's concerns. (A-54). This occurred and Harrington followed up with Brown by email, reminding him that he must keep any interactions with plaintiff professional:

> Per our meeting today, you must ensure you tone of voice is professional and appropriate; also if you have any interactions with Dr. Marquis, they must and will be on a professional level.

(A-30).

Employer even went above and beyond normal remedial measures--trying to address plaintiff's subjective inability to tolerate Mr. Brown's presence in the workplace--by offering her opportunities to transfer to a lateral position where she would have no contact with him. However, plaintiff failed to take advantage of these opportunities.  Plaintiff interviewed for,

---

14 Plaintiff acknowledges her use of the grievance process and employer's investigation and action as to her complaint.  (D.I. 1, ¶18) (A-4)

and was actually selected to fill one position in October, 2004, but then declined the offer. (A-66; 68). For the second position, plaintiff was scheduled for an interview in November, 2004, but subsequently declined the opportunity to interview. (A-62).

An employer's obligation, when allegations of co-worker harassment are made, is to take "prompt remedial action when the hostile environment is discovered." Weston, *supra*, 251 F.3d at 426. It is the plaintiff's burden to "demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action." Id at 427; *see also* West, *supra*, 45 F.3d at 756. An effective grievance procedure which timely stops the harassment "shields the employer from Title VII liability for hostile environment." Weston at 427(citation omitted).

It is quite clear on the record in this case that employer promptly addressed every concern voiced by Ms. Marquis, taking corrective action even as to those complaints which did not come close to rising to the level of "severe and pervasive" harassment, and even those complaints which had no sexual—merely personal—overtones. There is nothing in the record to show that employer *ever* failed to take action when plaintiff complained. Employer not only held counseling meetings with Mr. Brown, its actions culminated in an internal investigation in which Mr. Brown was disciplined and, employer noted that "if future harassment occurred, "progressive and severe discipline should be imposed." (A-38). Employer further provided a sexual harassment awareness training, which Brown attended. This training, according to plaintiff herself in an August 2004 email to Norwood Coleman, produced admirable results: "the training you provided a few months ago on sexual harassment has made a noticeable impact on the YRC's [Brown's] behavior toward

34

me....Thank you for all of your help!"  No further complaints of any kind after this date

appear in the record.

Just as in <u>Weston</u>, employer's grievance process was obviously known to plaintiff

(she used it) and, by plaintiff's own admissions, defendant's efforts were effective.  251 F.3d

at 427.  Accordingly, plaintiff could not demonstrate liability on defendant for any of

Brown's actions, even assuming *arguendo* they rose to the level of severe and pervasive

harassment.  Summary judgment must therefore be granted for Defendant for this reason

also.

## II.  SUMMARY JUDGMENT MUST BE GRANTED AS TO COUNT III, A CLAIM ALLEGING VIOLATION OF 42 U.S.C. §1983, AS THE STATE OF DELAWARE AND ITS AGENCIES ARE IMMUNE FROM SUIT UNDER THE ELEVENTH AMENDMENT.

### A.  Standard of Review.

*See* Standard of Review, §I(A), supra.  Plaintiff does not, as a matter of law, state any

justiciable claim in Count III against DSCYF, as that defendant—a state agency--is immune

from suit under 42 U.S.C. §1983.  Defendant is therefore entitled to judgment as a matter of

law on this claim.  Furthermore, Plaintiff's complaint, on its face, fails to allege facts which

would state a claim of retaliation for exercise of First Amendment rights.

### B. Eleventh Amendment Immunity.

In plaintiff's Count III, she claims her employer engaged in "retaliation" for her

alleged exercise of First Amendment free speech, in violation of 42 U.S.C. §1983.[15]  The

sole defendant named by Plaintiff in this case is a State of Delaware agency, the Department

of Services for Children, Youth and their Families.  It is well settled that this defendant is

---

15  While plaintiff claims she "spoke in writing" "on at least 30 occasions" in 2005, there is no documentation

Constitutionally immune from suit under §1983.

Count III is barred by the Eleventh Amendment, which provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." While the Amendment does not facially bar suits against the State by its own citizens, the United States Supreme Court has long held that in the absence of consent, a state is "immune from suits brought in federal courts by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662-63 (1974).

The Eleventh Amendment stands "for the constitutional principle that State sovereign immunity limit[s] the federal courts' jurisdiction under Article III." Seminole Tribe of Florida v. Florida, 517 U.S. 44 (1996). "[I]n the absence of congressional abrogation or consent, a suit against a state agency is proscribed." Neeley v. Samis, 183 F. Supp. 2d 672, 678 (D. Del. 2002). The United States Congress can waive the state's sovereign immunity, and therefore, its Eleventh Amendment immunity through the Fourteenth Amendment; however, only a clear indication of Congress' intent to waive state immunity will produce this result. Id.

No such clear intent can be found in 42 U.S.C. §1983. In fact, a review of the statute demonstrates that Congress did not intend to waive the states' immunity. The statute facially allows suits only to be brought against "persons." 42 U.S.C. §1983. Neither the State of Delaware, its agencies nor its officials acting in their official capacity are "persons" as

---

of this whatsoever in the record. Accordingly, summary judgment would be appropriate even if this claim had been made against a proper defendant.

contemplated by 42 U.S.C. § 1983. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58 (1989). Accordingly, plaintiff fails to state a claim upon which relief can be granted in her "First Amendment" retaliation count.

While the immunity bar is dispositive as to Count III, it is worth noting that plaintiff's claims would also not state a claim for First Amendment "retaliation" as a matter of law, even if a proper defendant had been named. Plaintiff alleges (and again, no support for these allegations appears in the record) that she spoke out regarding "the care of the juvenile residents at the facility" where she worked as a child psychologist, and complained about a violation of defendant's suicide prevention policy concerning unsupervised residents. (D.I. 1, ¶¶20-23) (A-4). Clearly, plaintiff is alleging that she was speaking out about issues (internal conditions and policies as to juveniles in her care) within the context of her job duties as a child psychologist at the facility. The United States Supreme Court has, in a key decision interpreting the First Amendment, held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications...." <u>Garcetti v. Ceballos</u>, 126 S.Ct. 1951 (2006)(District Attorney, complaining about alleged misconduct in processing case within his office, held not to engage in speech protected by First Amendment); <u>Price v. MacLeish</u>, 2006 WL 2346430, Sleet, J. (D.Del. 2006)(troopers complaining about alleged health hazards at worksite which they maintained held not to engage in protected speech). Clearly, in this case, plaintiff's purported speech concerned defendant's internal policies and care of the juveniles at the DSCYF facility where she was employed as a child psychologist. Her complaints were integrally related to her job duties and would, therefore, be inactionable under <u>Garcetti</u>.

## **CONCLUSION**

Defendant is entitled to judgment as a matter of law in this case.  This is a textbook case for Rule 56 Summary Judgment.  As the Supreme Court has stated:

> Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial.

Celotex, *supra* 477 U.S. at 322 (emphasis added).

No discovery has been conducted by plaintiff.  There are no facts of record upon which a reasonable jury could base a finding of Title VII gender discrimination.  The record that does exist affirmatively negates the necessary elements of proof for plaintiff's claims of employer liability for workplace harassment and discrimination.  Plaintiff entirely fails to state a claim for Title VII retaliation and has failed to exhaust her EEOC administrative remedies as to this claim.  Finally, plaintiff cannot maintain her claim of §1983 "First Amendment retaliation" as the named defendant, a State entity, is immune from suit.

Defendant respectfully requests this Honorable Court grant Summary Judgment in its favor as to all Counts, pursuant to Rule 56(c).

**DEPARTMENT OF JUSTICE
STATE OF DELAWARE**


By:___/s/ Stephani J. Ballard_____
STEPHANI J. BALLARD  (I.D. No. 3481)
JAMES J. MAXWELL, I.D. #2892
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400

DATED:  October 2, 2006          Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**IN AND FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ANNE MARIE MARQUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-501-SLR |
| | ) | |
| STATE OF DELAWARE, | ) | |
| DEPARTMENT OF SERVICES FOR | ) | |
| CHILDREN, YOUTH AND THEIR | ) | |
| FAMILIES, | ) | |
| | ) | |
| Defendant. | ) | |

**CERTIFICATE OF MAILING AND/OR DELIVERY**

The undersigned certifies that on October 2, 2006, she caused the attached,

*Opening Brief in Support of Defendant's Motion for Summary Judgment*, to be

electronically filed with the Clerk of Court using CM/ECF which will send notification of

such filing to the following:

> Gary W. Aber, Esquire
> Aber, Goldlust, Baker & Over
> First Federal Plaza, Suite 600
> P.O. Box 1675
> Wilmington, DE 19899

> /s/ Stephani J. Ballard
> Stephani J. Ballard, I.D. #3481
> Deputy Attorney General
> Carvel State Office Building
> 820 N. French Street, 6th Floor
> Wilmington, DE 19801
> (302)577-8400
> Attorney for Defendant