## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE DISTRICT OF DELAWARE

ANNE MARIE MARQUIS,      )
)
      Plaintiff,    )
)
    v.       )    C.A. No. 05-501-SLR
)
STATE OF DELAWARE,    )
DEPARTMENT OF SERVICES FOR    )
CHILDREN, YOUTH AND THEIR    )
FAMILIES,    )
)
      Defendant.    )

## APPENDIX TO OPENING BRIEF IN SUPPORT OF
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**DEPARTMENT OF JUSTICE**
**STATE OF DELAWARE**

STEPHANI J. BALLARD, I.D. #3481
JAMES J. MAXWELL, I.D. #2892
Deputy Attorneys General
Carvel State Office Building
820 North French Street
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendant

DATED: October 2, 2006

## **TABLE OF CONTENTS**

Page

Complaint ................................................................................................................. A-1

Answer ................................................................................................................... A-12

Scheduling Order, 1/12/06 ..................................................................................... A-19

Defendant's Initial Disclosures, 2/7/06................................................................. A-22

Documents produced with Defendant's Initial Disclosures............................................ A-28

Defendant's Interrogatories to Plaintiff, 3/14/06 ......................................................... A-73

Defendant's Requests for Production to Plaintiff, 3/14/06 ............................................. A-91

Letter to Plaintiff's Counsel, 2/24/06.......................................................................... A-102

Letter to Plaintiff's Counsel, 3/13/06.......................................................................... A-103

Letter to Plaintiff's Counsel, 6/20/06.......................................................................... A-105

Plaintiff's Initial Disclosures, 7/6/06 ........................................................................ A-107

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANNE MARIE MARQUIS,                    )
                                       )
            Plaintiff,                 )
                                       )        C.A. No.:    -  0 5 - _ 5 0
      v.                               )
                                       )        Trial By Jury Demanded
STATE OF DELAWARE,                     )
DEPARTMENT OF SERVICES FOR             )
CHILDREN, YOUTH AND THEIR              )
FAMILIES,                              )
                                       )
            Defendant.                 )

## COMPLAINT

### THE PARTIES

1.     The plaintiff, Anne Marie Marquis (hereinafter referred to as "Plaintiff") was at all times relevant to this complaint a resident of the State of Delaware.

2.     The defendant, the State of Delaware, Department of Services for Children, Youth and Their Families (hereinafter referred to as "Defendant") is an agency of the State of Delaware.

3.     The plaintiff is a female psychologist, with a Graduate Doctorate Degree, employed by the defendant, as a treating psychologist at its facility located at the New Castle County Detention Center for juveniles.

### JURISDICTION

4.     This Court had jurisdiction over this matter in that it is brought pursuant to the provisions of 28 U.S.C. §§1331, 1332 and 1343(a)(3)(4), 28 U.S.C. §§ 2201, 2202 as well as the Fourteenth Amendment of the United States Constitution.

5.      In addition, this action also arises under Title VII, The Civil Rights Act of 1964, 42 U.S.C. §2000e, et.seq., as amended by the Civil Rights Act of 1991, §704 of Title VII, and 42 U.S.C. §1983.

## VENUE

6.      The unlawful practices alleged herein were committed within the State of Delaware, accordingly venue lies with this Court under 42 U.S.C. §1339(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.      Prior to the filing of this action the plaintiff timely filed a charge of sexual discrimination and harassment simultaneously with the Delaware Department of Labor and the Equal Employment Opportunity Commission, on December 15, 2003 (a copy of which is attached hereto as Exhibit No. 1), alleging the discriminatory and harassing conduct, which occurred beginning in July 1999 and continue through December 9, 2003, constituting a continuing course of conduct by the defendant.

8.      Thereafter, on or about January 3, 2005, the Delaware Department of Labor issued a "Reasonable Cause Determination" that "...there is reasonable cause to believe that an unlawful employment practice has occurred."

9.      Subsequently, on April 18, 2005, the United State Equal Employment Opportunity Commission issued to the plaintiff, at the plaintiff's request a "Notice of Right to Sue" (attached hereto as Exhibit No. 2).

## FACTS

10.     The plaintiff is a female employee who began working for the defendant on or about June 19, 1999 as a child psychologist.

11.     During the summer of 1999 the plaintiff was physically harassed by a co-worker, and that harassment was immediately reported to the plaintiff's supervisor, Andrew Haddert, who, in fulfilling his obligations, then reported the complaint to the defendant's administration.

12.     Following that complaint, while the offensive physical contact by the perpetrator of the sexual harassment ceased, the perpetrator continued his non-contact harassing conduct towards the plaintiff by leering at her, physically approaching her, and acting in a threatening manner.

13.     The actions of the perpetrator of the sexual harassment made statements that he would want to see the plaintiff in spandex, physically cornering the plaintiff in her office, and continual attempts to place himself in close physical proximity to the plaintiff, as a form of intimidation.

14.     The perpetrator of the sexual harassment was subsequently promoted to a supervisor position and continued the mental and psychological harassment of the plaintiff.

15.     In March 2003, the perpetrator was assigned to the same shift to the plaintiff where his conduct became more aggravated, and the plaintiff, was forced to complain of his actions to the administration.

16.     On or about April 11, 2003, a meeting was held between the plaintiff, administration and the perpetrator of the sexual harassment, during which the perpetrator admitted to one or more of the harassing incidents.

17.     Following the meeting of April 11, 2003, the perpetrator of the sexual harassment continued his psychological and mental intimidation and harassment with a result that the plaintiff filed a formal complaint with the defendant's Division of Human Resources Department in May 2003.

18.    As a result of the Complaint filed in May 2003, on or about September 29, 2003 a decision was made through that investigation that the allegations made by the plaintiff were substantiated and recommendations for actions to relieve the plaintiff of the harassment were made to appropriate division officials.

19.    The administration of the plaintiff's division has taken no action to prevent further harassment.

20.    The plaintiff has on a regular and continual basis spoken out on matters of public concern with regards to the care of the juvenile residents at the facility to which she is assigned.

21.    On December 9, 2003, she contacted Shirley R. Bryson concerning inadequate care for some of the juvenile's in her assigned facility.

22.    On April 21, 2003 she contacted J.E. Harrington confirming that she had been denied permission to visit various units so she could attend to juveniles for whose care she was responsible.

23.    During the year 2005, on at least 30 different occasions she spoke in writing complaining about the failure to abide by, among other things, a violation of Suicide Prevention Policy No. 73, unsupervised residents.

24.    As a direct result of an in retaliation for the matters of public concern, about which the plaintiff made comments, the defendant has failed to take appropriate actions to protect her from the harassment of the perpetrator described herein.

25.    As a direct and proximate result of the failure of the defendants to take appropriate remedial action to prevent the perpetrator of the sexual harassment from continuing his actions, the plaintiff has been unable to go about her normal and proper work activities, and has been forced to endure mental suffering, pain and discomfort.

## COUNT I

### Discrimination Under 42 U.S.C. §2000e

26. The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 20.

27. The defendant's employees have viewed the plaintiff in a discriminatory and harassing fashion based upon her sex, so as to constitute a hostile work environment in violation of 42 U.S.C. §2000e-2.

## COUNT II

### Retaliation Under 42 U.S.C. §2000e-3

28. The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 22.

29. The actions of the defendant in failing to protect the plaintiff from the intimidation and harassment of the perpetrator as described herein was a result and retaliation for her opposition to claims of employment discrimination and such failures were retaliatory in violation of 42 U.S.C. §2000e-(3).

## COUNT III

### Free Speech Violation

30. The plaintiff incorporates herein and makes a part hereof the allegations contained in paragraphs 1 through 24.

31. The defendant took action adverse to the plaintiff as a direct and proximate result of retaliation of the plaintiff exercising her First Amendment protected speech on matters of public concern. There is a demonstrated and admitted causal relationship between the plaintiff's aforementioned protected speech and the adverse employment actions described herein, which

allowed the plaintiff to continue to suffer the sexual harassment as described herein, and thus, the First Amendment protected activity was a substantial or motivating factor in creating a hostile environment for the plaintiff.

32.    The defendant cannot prove by a preponderance of the evidence that absent a constitutional violation, they would have had appropriate grounds to allow the harassing conduct towards the plaintiff.

33.    The plaintiff's constitutional right of free speech has been denied under the First Amendment of the United States Constitution and 42 U.S.C. §1983.

**WHEREFORE,** the plaintiff requests this Court to:

a.    Enter a judgment against the defendants.

b.    Enter a declaratory judgment stating that the acts of the defendant are a violation of the plaintiff's constitutional rights.

c.    Enter a declaratory judgment declaring that the acts of the defendant are in violation of Title VII, 42 U.S.C. §2000e.

d.    Enter a judgment against the defendant for compensatory damages, including any lost wages, and for her pain, suffering, humiliation, embarrassment, and other personal injuries.

e.    Enter injunctive relief directing that the defendant take appropriate actions to cause all discriminatory and harassing conduct towards the plaintiff to cease.

f.    Award the plaintiff costs, interest, and attorney fees for this lawsuit.

e.    Award such other and further relief as this Court deems just and appropriate.

ABER, GOLDLUST, BAKER & OVER

GARY W. ABER (DSB #754)
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE  19899
(302) 472-4900
Attorney for Plaintiff

DATED:  July 19, 2005

A00007

# EXHIBIT 1

A00008

| CHARGE OF DISCRIMINATION | ENTER CHARGE NUMBER |
|---|---|
| This form is affected by the Privacy Act of 1974 | ☐ FEPA<br>☐ EEOC |

| Delaware Department of Labor | and EEOC |
|---|---|

(State, or local Agency, if any)

| NAME (Indicate Mr., Mrs., Ms) | HOME TELEPHONE NO. (Include Area Code) |
|---|---|
| Anne Marie Marquis | (302) 996-4974 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 233 Greenbank Rd Apt. B-1 | Wilmington DE 19808   NCC | |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one, list below.)*

| NAME  State of Delaware  DSCYF | NO. OF EMPLOYEES OR | TELEPHONE NUMBER (Incl. Area Code) |
|---|---|---|
| New Castle County Detention Center | MEMBERS  15+ | (302) 633-3100 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| 963 Centre Road  Wilmington, DE   19808 | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| | |

| REET ADDRESS | CITY, STATE AND ZIP CODE |
|---|---|
| | |

| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE<br><br>☐ RETALIATION    ☐ DISABILITY    ☐ OTHER (Specify) | DATE DISCRIMINATION TOOK PLACE<br>EARLIEST  7/15/1999<br>LATEST     12/9/2003<br>☒ CONTINUING ACTION |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attached extra sheet(s):

I. I am a female individual who has been working for Respondent since 06/16/99 most recently as a Child Psychologist. In the summer of 1999 I was sexually harassed by a co-worker, Mr. Mike Brown. This issue was immediately reported to my supervisor, Dr. Andrew Hadden. Dr. Hadden then reported this complaint to Mr. Darryl Dawson, (Administrator). Following this notification, Mr. Brown ceased making direct physical contact and sexual comments towards me. However, from this time on Mr. Brown persisted in using eye contact and interactions in the office to intimidate me. In 2000, Mr. Brown was promoted to a supervisor position and as a result moved to an entirely different shift than mine (C-shift). Since this time, I have come into work on the weekends and have been approached by Mr. Brown only to be extremely harassed and intimidated to the point of a very hostile work environment. In March 2003, Mr. Brown was moved to my same shift. In March and April of )03, in light of Mr. Brown's transfer back to my shift I made both my supervisor, Earl Harrington and Mr. Norwood Coleman, Affirmative Action Representative of Human Resources aware of my concerns with regard to Mr. Brown's actions towards me. A meeting was called on 04/11/03 with Mr. Harrington , Mr. Brown and myself where Mr. Brown verbally admitted to one of the weekend incidents. Following this meeting, Mr. Brown continued his severe intimidation and sexual harassment of me. I lodged a formal complaint in May of 2003 with Human Resources which resulted in an investigation. On 09/29/03 a decision was made that the allegation I made was substantiated and that recommendations for action have been made to the appropriate Division officials. To date I am continually subjected to Mr. Brown's intimidation.

II. Respondent has not taken any disciplinary action against Mr. Brown.

III. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended and the Delaware Discrimination in Employment Act by being sexually harassed by Mr. Brown. During the meeting on 04/11/03, Mr. Brown verbally admitted to 1. previously stating he would like to see me in spandex and 2. to physically cornering me in my office during the weekend to rationalize his actions. Presently, Mr. Brown has an office in another part of the building but continually comes to my work area and hangs around my office in an attempt to have contact with me. Mr. Brown makes weekly attempts when I come out of my office to interupt my path of travel and make his presence known as a form of intimidation. This was most clearly demonstrated during the week of 11/24/03 when Mr. Brown's supervisor was on vacation and Mr. Brown literally lingered outside my office at a counter for extended periods of time each day.

| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | SIGNATURE OF COMPLAINANT<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | NOTARY - (When necessary to meet State and Local Requirements)  A00009 |

# EXHIBIT 2

A00010



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5059 2417

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson, EMP, PHB, Room 4239*
*Washington, DC 20530*

April 19, 2005

Ms. Anne M. Marquis
233 Greenbank Rd., Apt. B-1
Wilmington, DE  19808

Re:  EEOC Charge Against State of Delaware/ DSCYF at New Castle County Detention Center
      No. 17C200400195

Dear Ms. Marquis:

     Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

     If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

     This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                         R. Alexander Acosta
                       Assistant Attorney General
                         Civil Rights Division

              by    *Karen L. Ferguson*

                          Karen L. Ferguson
                         Civil Rights Analyst
                      Employment Litigation Section

cc:  Philadelphia District Office, EEOC
     State of Delaware/ DSCYF at New Castle County Detention Center

A00011

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANNE MARIE MARQUIS,      )
        )
    Plaintiff,        )
        )
    v.             )      C.A. No. 05-501-SLR
        )
STATE OF DELAWARE,       )
DEPARTMENT OF SERVICES FOR   )
CHILDREN, YOUTH AND THEIR    )
FAMILIES,             )
        )
    Defendant.       )

## ANSWER

1.     The Defendant is without sufficient knowledge or information sufficient to form a belief

as to the truthfulness of this paragraph.

2.     Admitted.

3.     Admitted that the Plaintiff has maintained continuous employment as a psychologist at the New Castle County Detention Center, denied as to the remainder of the allegations contained in the paragraph.

4.     The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

5.     The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

6.     The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

7.     The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

A00012

8.      Admitted that the Delaware Department of Labor accepted the allegations of the Plaintiff, denied as to the remainder of the allegations contained in the paragraph.

9.      Admitted that the Plaintiff was issued a "Notice of Right to Sue" letter on April 18, 2005 at her request.

10.     Admitted that the Plaintiff is employed by the Department of Services for Children, Youth, and their Families. The balance of the paragraph is denied.

11.     The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph with respect to any individual with the last name Haddert. On information and belief, the Plaintiff was supervised by an individual named Andrew Hadden. Denied that any harassment was immediately reported.

12.     The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

13.     The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

14.     The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

15.     The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

16.     The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

17.     The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

18.    The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

19.    Denied.

20.    The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

21.    The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

22.    Denied as alleged. The Plaintiff was concerned about her personal safety when visiting various housing units, and as a result, by agreement with her supervisors was granted permission to see residents in her office as opposed to at their housing units.

23.    The Defendant is without sufficient knowledge or information sufficient to form a belief as to the truthfulness of this paragraph.

24.    The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

25.    The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

26.    The Defendant incorporates herein and makes a part hereof the answers contained in paragraphs 1 through 25 of this Answer.

27.    The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

28.    The Defendant incorporates herein and makes a part hereof the answers contained in paragraphs 1 through 27 of this Answer.

29.     The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

30.     The Defendant incorporates herein and makes a part hereof the answers contained in paragraphs 1 through 29 of this Answer.

31.     The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

32.     The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

33.     The paragraph states a legal conclusion/argument to which no response is required. To the extent an answer is required, it is specifically denied in its entirety.

### DEFENSES/AFFIRMATIVE DEFENSES

### First Defense

34.     This matter is barred by the Eleventh Amendment of the U.S. Constitution.

### Second Defense

35.     The Court lacks original jurisdiction pursuant to Art. III, § 2 of the U.S. Constitution.

### Third Defense

36.     The complaint fails to state a legal claim for which relief can be granted.

### Fourth Defense

37.     The complaint should dismissed, in whole or in part, for failure to exhaust administrative remedies.

### Fifth Defense

38.    Plaintiff's claims, in whole or in part, are barred by the appropriate statute of limitation, repose, or other statutorily required administrative time requirement.

### Sixth Defense

39.    The Defendant took prompt remedial action upon learning of the Plaintiff's concerns.

### Seventh Defense

40.    The Defendant exercised reasonable care to prevent and correct promptly any allegedly sexually harassing behavior and the Plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

### Eighth Defense

41.    The Plaintiff failed to mitigate any alleged damages.

**WHEREFORE**, the Defendant demands that judgment be entered in its favor as to all claims and against the Plaintiff as to all claims and that attorney fees be awarded to the Defendant.

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

/s/ Aaron R. Goldstein
Aaron R. Goldstein
James J. Maxwell
Deputy Attorneys General
Department of Justice
Carvel State Building
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
aaron.goldstein@state.de.us

DATE:  November 7, 2005

### *CERTIFICATE OF SERVICE*

I hereby certify that on November 7, 2005, I electronically filed the *Defendant's Answer to the Complaint* with the Clerk of Court using CM/ECF which will send notification of such filing to the following: Gary W. Aber, Esquire.

/s/ Aaron R. Goldstein
Deputy Attorney General
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
aaron.goldstein@state.de.us

## Answers to Complaints

1:05-cv-00501-SLR Marquis v. State of Delaware et al

### U.S. District Court

### District of Delaware

Notice of Electronic Filing

The following transaction was received from Goldstein, Aaron R. entered on 11/7/2005 at 10:22 AM
EST and filed on 11/7/2005

**Case Name:**          Marquis v. State of Delaware et al
**Case Number:**        1:05-cv-501
**Filer:**              State of Delaware
                        Department of Services for Children, Youth and their Families
**Document Number:** 3

**Docket Text:**
ANSWER to Complaint by State of Delaware, Department of Services for Children, Youth and their
Families.(Goldstein, Aaron)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1079733196 [Date=11/7/2005] [FileNumber=123042-0]
[5221da96f1a49b57c59d3bea19b56fc2198dbe9fbb9de9b48160fa6ce03200a6f03c
84755a38564af025bd9f62fcd776125df990c934e39eeeebb3f83b75624f]]

**1:05-cv-501 Notice will be electronically mailed to:**

Gary W. Aber    gaber@gablawde.com,

Aaron R. Goldstein    Aaron.Goldstein@state.de.us

**1:05-cv-501 Notice will be delivered by other means to:**

A00018

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ANNE MARIE MARQUIS,                          )
                                             )
                Plaintiff,                   )
                                             )      C.A. No.: 05-501 (SLR)
        v.                                   )
                                             )
STATE OF DELAWARE,                           )      Trial By Jury Demanded
DEPARTMENT OF SERVICES FOR                   )
CHILDREN, YOUTH AND THEIR                    )
FAMILIES,                                    )
                                             )
                Defendant.                   )

## PROPOSED SCHEDULING ORDER

At Wilmington this ___12th___ day of ___January___, 2006, the parties having satisfied

their obligations under Fed.R.Civ.P. 26(f), and the court having conducted a pretrial scheduling

conference pursuant to Fed.R.Civ.P. 16 and De.Del. LR 16.2 (a) and (b).

IT IS ORDERED that:

1.      **Pre-Discovery Disclosures**.  The parties will exchange by February 7, 2006 the

information required by Fed.R.Civ.P. 26(a)(1) and D.Del. LR 16.2.

2.      **Discovery**.

        (a)     Discovery will be needed on the following subjects:

        (b)     All discovery shall be commenced in time to be completed by September

1, 2006.

        (c)     Maximum of thirty (30) interrogatories by each party to any other party.

        (d)     Maximum of twenty (20) requests for admission by each party to any

other party.

        (e)     Maximum of ten (10) depositions by plaintiff and five (5) by defendant.

(f)     Each deposition is limited to a maximum of seven (7) hours unless extended by agreement of parties.

(g)     Reports from retained experts under Rule 26(a)(2) on issues for which any party has the burden of proof due by June 1, 2006.  Rebuttal expert reports due by July 30, 2006.

(h)     **Discovery Disputes**. Any discovery dispute shall be submitted to the court pursuant to Fed.R. Civ.P. 37.  During the course of discovery, each party is limited to **two (2) Rule 37 motions**.  The court shall make itself available, however, to resolve through a telephone conference, disputes that arise during the course of a deposition and disputes related to entry of a protective order.

3.     **Joinder of other Parties, Amendment of Pleadings, and Class Certification.** All motions to join other parties, amend the pleadings, and certify a class action shall be filed on or before March 1, 2006.

4.     **Settlement Conference**.  Pursuant to 28 U.S.C. §636, this matter is referred to Magistrate Judge Thynge for the purposes of exploring ADR.

5.     **Summary Judgment Motions**.  All summary judgment motions shall be served and filed with an opening brief on or before October 1, 2006.  Briefing shall be pursuant to D.Del. LR 7.1.2.  No summary judgment motion may be filed more than **ten (10)** days from the above date without leave of the court.

6.     **Applications by Motion**.  Any application to the court shall be written motion filed with the clerk.  Unless otherwise requested by the court, counsel shall not deliver copies of papers or correspondence to chambers. **Any non-dispositive motion shall contain the statement required by D. Del. LR. 7.1.1.**

7.   **Motions in Limine**. All motions in limine shall be filed on or before  1/16/07.
All responses to said motions shall be filed on or before  1/23/07 .

8.   **Pretrial Conference.** A pretrial conference will be held on  1/30/07 , at
4:30 p. m. in courtroom 6B, sixth floor Federal Building, 844 King Street, Wilmington,
Delaware. The Federal Rules of Civil Procedure and D.Del. LR 16.4 shall govern the pretrial
conference.

9.   **Trial.** This matter is scheduled for a _____ bench/jury trial commencing
on  2/12/07  in courtroom 6B, sixth floor Federal Building, 844 King Street,
Wilmington, Delaware. For purposes of completing pretrial preparations, the parties should plan
on being allocated a total number of hours in which to present their respective cases.


_____
The Honorable Sue L. Robinson

A00021

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANNE MARIE MARQUIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 05-501-SLR |
| | ) | |
| STATE OF DELAWARE, | ) | |
| DEPARTMENT OF SERVICES FOR | ) | |
| CHILDREN, YOUTH AND THEIR | ) | |
| FAMILIES, | ) | |
| | ) | |
| Defendant. | ) | |

### NOTICE AND CERTIFICATE OF SERVICE

I, Aaron R. Goldstein, Attorney for Defendant, hereby certify that on February 7, 2006, I served upon all persons listed below two true and correct copies of Defendant's initial disclosures pursuant to Rule 26 of the Federal Rules of Civil Procedure in the above-captioned matter by hand delivery:

Gary W. Aber, Esquire
702 King Street, Suite 600
P.O. Box 1675
Wilmington, DE 19899
*Attorney for the Plaintiff*

**STATE OF DELAWARE**
**DEPARTMENT OF JUSTICE**

/s/ Aaron R. Goldstein
_____

Aaron R. Goldstein (I.D. # 3735)
Deputy Attorney General
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
Attorney for Defendant DSCYF.

DATE: February 7, 2006

A00022

### CERTIFICATE OF MAILING AND/OR DELIVERY

I hereby certify that on February 7, 2006, I electronically filed *Notice of Defendant's Rule 26 Initial Disclosures* with the Clerk of the Court using CM/ECF which will send notification of such filing to the following: Gary W. Aber, Esquire.


/s/ Aaron R. Goldstein
Department of Justice
820 N. French Street, 6th Floor
Wilmington, DE 19801
(302) 577-8400
aaron.goldstein@state.de.us

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ANNE MARIE MARQUIS,                    )
                                       )
      Plaintiff,                  )
                                       )
      v.                          )    C.A. No. 05-501-SLR
                                       )
STATE OF DELAWARE,                     )
DEPARTMENT OF SERVICES FOR             )
CHILDREN, YOUTH AND THEIR              )
FAMILIES,                              )
                                       )
      Defendant.                  )

## DEFENDANT STATE OF DELAWARE DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH, AND THEIR FAMILIES RULE 26(a)(1) INITIAL DISCLOSURES

Defendant State of Delaware Department of Services for Children, Youth, and their Families ("DSCYF") discloses the following information in compliance with Rule 26(a)(1) of the Federal Rules of Civil Procedure and the Scheduling Order in this matter. These disclosures are based on information reasonably available to Defendant DSCYF as of this date. Continuing investigation and discovery may alter these disclosures. Defendant DSCYF reserves the right to supplement the information disclosed below if additional information becomes available.

By making these disclosures, Defendant DSCYF does not represent that it is identifying every document, tangible thing, or witness possibly relevant to this claim. Nor does Defendant DSCYF waive its right to object to the production of any document or tangible thing disclosed on the basis of any privilege, the work-product doctrine, relevancy, undue burden or any other valid objection. Defendant DSCYF's disclosures represent a good faith effort to identify information it reasonably believes is required by

A00024

Rule 26(a)(1).

Defendant DSCYF's disclosures are made without waiver of: 1) the right to object on the grounds of competency, privilege, relevancy and materiality, hearsay or other proper ground, 2) the right to object to the use of any such information, for any purpose, in whole or in part, in any other action; and 3) the right to object on any and all proper grounds, at any time, to any other discovery request or proceeding involving or relating to the subject matter of these disclosures.

All of the disclosures set forth below are made subject to the above objections and qualifications.

**(A)    Individuals likely to have discoverable information in support of Defendant's defenses.[1]**

> 1)    Nancy D. Pearsall, Division Director – DSCYF;
>
> 2)    Daryl Dawson, Social Service Senior Administrator – DSCYF;
>
> 3)    Earl Harrington, Assistant Superintendent of NCCDC;
>
> 4)    Norwood Coleman, Affirmative Action Officer;
>
> 5)    Karen R. Smith, Human Resource Specialist;
>
> 6)    Shirley Bryson – former Superintendent of NCCDC (no longer employed by the Department);
>
> 7)    Dr. Andrew Hadden, Child Psychologist Supervisor (no longer employed by the Department).

In addition, Defendant DSCYF reserves its right, pursuant to Rule 26(e) to identify additional witnesses. Defendant further reserves the right to identify and call any

---

[1] Unless otherwise indicated, all listed witnesses, employees of Defendant DSCYF, should be considered as represented by counsel and can be reached by contacting same.

A00025

witnesses listed by the Plaintiff.

    **(B)**    **Documents.**

    1.    Contents of Plaintiff's Personnel files, including but not limited to all disciplinary, payroll, attendance, training, and evaluation-related documentation contained therein (originals located at the DSCYF Administrative Building).

    2.    State of Delaware Merit Employee rules (available at www.delaware.gov).

    4.    Any and all documents containing statements of the Plaintiff in relation to her allegations in this civil action.

    5.    Any and all non-privileged documents relating to Plaintiff's Department of Labor complaints alleging any transaction and/or occurrence relating to this civil action.

    Copies of all currently available non-privileged documents are enclosed herein.[2] In addition, Defendant DSCYF reserves its right, pursuant to Rule 26(e) to identify additional documents. Defendant further reserves the right to identify and utilize any document listed by the Plaintiff.

    **(C)**    **Damage Computation.**

    Defendant DSCYF has not filed a counter-claim for damages at this time. Defendant DSCYF reserves the right to file a counterclaim against the Plaintiff as may be permitted by the Federal Rules of Civil Procedure.

    **(D)**    **Insurance Agreements.**

    None.

---

[2] Additionally, personal identifying information has been redacted for non-parties, juveniles within the custody of DSCYF, and certain employees of DSCYF.

A00026

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

Aaron R. Goldstein (#3735)
James J. Maxwell (#2892)
Deputy Attorney General
Carvel State Office Building
820 N. French Street, 6th floor
Wilmington, DE 19801
(302) 577-8400
Attorneys for Defendant DSCYF.

DATE: February 7, 2006

A00027

*State of Delaware*



# The Department of Services for Children, Youth and Their Families

*Division of*
*Youth Rehabilitative Services* • *New Castle County Detention Center* • **Phone:** 302-633-3100
**Fax:** 302-995-8393

November 20, 2003

Michael Brown



Dear Mr. Brown:

This is to advise you that I am considering discipline in the form of a three (3) day suspension without pay. This recommendation is as a result of a formal complaint filed by a female staff at New Castle County Detention alleging sexual harassment by you.

As you are aware, as far back as the year 1999, Anne Marie Marquis had gone to her supervisor at the time alleging that you were sexually harassing her. A meeting was held with you, Dr. Marquis and her supervisor at the time, in which an agreement was reached between you and Dr. Marquis that the harassment would cease. Dr. Marquis asserts that you never ceased harassing her, it only became more subtle. She also alleges that due to your continuing pattern of harassment she became frightened and suspicious of any interaction with you. In December, 2002, you were promoted and as a result you were assigned to another shift and had less interaction with Dr. Marquis.

On or about March, 2003, you were assigned back to A shift, which brought you in contact with Dr. Marquis. She alleges that at that time she informed you that she wanted no contact with you, but you continued to attempt to interact with her. I convened a meeting with you and Dr. Marquis. In that meeting you acknowledged having made inappropriate comments and apologized.

In addition, as a result of the formal complaint a meeting was held with the Department's Affirmative Action Officer. In that meeting you acknowledged Dr. Marquis concerns and that you had entered into an agreement previously to cease the harassment. You also acknowledged that you attempted to remain friendly with Dr. Marquis and that a new agreement was entered into that you may have also violated with respect to Dr. Marquis' boundaries.

> The Mission of the Division of Youth Rehabilitative Services is:
> **To ensure public safety and facilitate positive change of the youth in our care.**

established procedures and policies. By your actions, you have seriously jeopardized your credibility as a supervisor. In addition, as a manager in this Department, your failure to help create a respectful work environment and your contribution to a hostile work environment at New Castle County Detention Center places the Department in a vulnerable position in addition to a negative affect on female staff. This activity must cease.

As a consequence of your actions, I am considering a three (3) day suspension without pay. Prior to doing so, you are entitled to a pre-decision meeting to present any reasons why I should not proceed with the discipline or reasons why the penalty is too severe. Requests for a pre-decision meeting are to be made in writing to Charles T. Watkins, Jr., Human Resource Manager, 1825 Faulkland Road, Wilmington Delaware, 19805. Such a request must be made within fifteen (15) calendar days form the date of this notice.

Sincerely,

Earl Harrington

Pc:  Nancy D. Pearsall, Director
     Shirley Bryson, Superintendent

**000003**

A00029

**Harrington J E (DSCYF)**

| | |
|---|---|
| **From:** | Harrington J E (DSCYF) |
| **Sent:** | Monday, June 21, 2004 4:23 PM |
| **To:** | Brown Michael D (DSCYF) |
| **Cc:** | Bryson Shirley R (DSCYF) |
| **Subject:** | meeting |

Per our meeting today, you must ensure your tone of voice is professional and appropriate; also if you have any interactions with Dr. Marquis, they must and will be on a professional level.

**000007**

A00030

*State of Delaware*



# The Department of Services
## for Children, Youth and
## Their Families

*Division of*
**Youth Rehabilitative Services**        •        *Office of the Director*        •        633 - 2620

## STEP THREE GRIEVANCE HEARING RESPONSE

**Grievant:**        Michael Brown, YRC Supervisor

**Hearing Officer:**    Joe Avallone, Quality Improvement Administrator

**Date of Hearing:**    March 30, 2004

**Present at Hearing:**    Michael Brown, grievant
                          Joe Conaway, President, Local 3384
                          Patricia Bailey, Council 81
                          Earl Harrington, Assistant Administrator, NCCDC
                          Karen Smith, Human Resources

**Statement of Grievance:**
"11.2 Just Cause – Failure to provide progressive discipline & training – Failure to provide adequate assistance, guidance, training for alleged victim."

**Adjustment Required:**
A negotiated settlement to the benefit of all parties.

**Discussion:**
At the onset of the Hearing, a copy of the "Affirmative Action Complaint, Notification of Complaint Disposition", dated September 29, 2003 was presented to the Hearing Officer for review. The "Disposition" reflected that the complaint against Mr. Brown was "substantiated".

Ms. Bailey and Mr. Conaway asserted that, as a result of that "Complaint Disposition", the Department's Affirmative Action Officer, Mr. Norwood Coleman had articulated a verbal recommendation that Mr. Brown receive a 'letter of Instruction' for his "substantiated" sexual harassment of Dr. Ann Marie Marquis. There was considerable discussion around the applicability/relevance of that reported verbal recommendation.

Local 3384 also questioned, and challenged the decision process that was used by the NCCDC administrators to determine that a three day suspension should be recommended/imposed on Mr. Brown for the substantiated sexual harassment. Earl Harrington and Karen Smith explained the Division and Departmental procedures that are used in making recommendations for disciplinary actions. (The same explanation was essentially provided in the "Summary" paragraph of the Pre-Suspension Hearing Results report, dated January 21, 2004.)

Other arguments/discussions that were presented by Local 3384 essentially replicated information that was provided, and then recorded in the Pre-Suspension Hearing Results report dated January 21, 2004. That information will not be redundantly re-presented in this report.

**Findings:**
Mr. Brown did not deny the allegations. In the 'charge letter' dated November 21, 2003 it is noted that Mr. Brown "...acknowledged having made inappropriate comments and apologized (to Dr. Marquis)".

**Page 2**

Based on the administrative findings of NCCDC, and the findings of the DSCYF Affirmative Action Officer, and based on Mr. Brown's admittance; it is evident that there was just cause for disciplinary action.

It is recommended that the disciplinary action be reduced from a three day suspension to a 'Letter of Reprimand'. This recommendation is based on the following mitigating factors: 1.) the level/degree of sexual harassment/misconduct (by available information); and 2.) Mr. Brown has received no prior disciplinary actions that were based on similar misconduct. **Grievance is denied.**

Pc:    Michael Brown
       Joe Conaway
       Patricia Bailey
       Earl Harrington
       Shirley Bryson
       Karen Smith
       Nancy Pearsall

A00032

TO: _Diane Haggery_
FROM: _Earl Harryt_
DATE: _3-14-03_
EMPLOYEE NAME: _Mike Brown_
EFFECTIVE DATE OF ACTION: _3-17-03_

*********************************************************************

## ACTION (CHECK APPROPRIATE BLOCK/BLOCKS)

/ / Change home address to: _____

phone number to: _____

/ / Change name to: _____
(attach copy of social security card with name change)

/X/ Shift change from ___C___ shift to ___A___ shift.

/ / Status change from probationary to permanent.

/ / Probationary appointment to the classification of _____ to replace _____
on _____ shift.
*For appointment made to clerical positions requiring typing proficiency, supervisor and/or interviewer must verify submission of the official certification bearing seal prior to offer of employment. original certification verified by _____.

/ / Casual/Seasonal/Temporary appointment.

/ / Promotion/Voluntary Demotion/Transfer to the classification of _____ to replace

/ / Change of office location _____ to _____

/ / Suspension without pay from _____ to _____

/ / Leave of absence without pay from _____ to _____

/ / Military Leave without pay from _____ to _____

/ / Termination  ____ Voluntary Resignation  ____ Dismissal
____ Transfer to another State Agency ____ Lay-off
____ Other
Last day worked _____

RECOMMENDED FOR REHIRE ____ YES ____ NO (JUSTIFICATION ATTACHED)

/ / Other _____

_Earl Harryt_
Authorized Signature

_3-14-03_
Date

301.rev.12/95

A00033

## PERSONNEL TRANSACTION FORM

**To:** *Diane Hagans*

**From:** *Earl Hbwgts*

**Date:** *12-11-00*

**Employee Name:** *MIKE BROWN*

**Effective Date Of Action:** *12-16-00*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**ACTION (Check appropriate block(s))**

☐ Change home address to: _____
_____
_____

phone number to: _____
Change name to: **(attach copy of Social Security Card with name change)**

☐ Shift change from _____ shift to _____ shift.

☐ Status change from probationary to permanent.

☑ Probationary appointment to the classification of *YRC Supervisor - C Shift* to replace
*Tyrone Boge* BP# _____
**\*For appointment made to clerical positions requiring typing proficiency, supervisor
and/or interviewer must verify submission of the official certification bearing seal prior to
offer of employment.  Original certification verified by _____.**

☐ Casual/Seasonal/Temporary appointment, BP#_____.

☐ Promotion/Voluntary Demotion/Transfer to the classification of _____ to replace
_____. BP#_____.

☐ Change of office location _____ to _____

☐ Suspension without pay from _____ to _____

☐ Military Leave without pay from _____ to _____

☐ Termination    _____ Voluntary Resignation    _____ Dismissal
_____ Transfer to another State Agency    _____ Other____
Last day worked: _____

**RECOMMENDED FOR REHIRE** _____ **YES** _____ **NO (Justification Attached)**

☐ Other _____
_____

*Earl Hbwgts*
_____
**Authorized Signature**
s:msw\personne\301frm.doc

*12-11-00*
_____
**Date**
rev.7/00

**000071**

# DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES
## AFFIRMATIVE ACTION COMPLAINT
## NOTIFICATION OF COMPLAINT DISPOSITION

**Complainant:** Anne Marie Marquis, Ph.D. Psychologist, New Castle County Detention Center, Division of Youth Rehabilitative Services

**Respondent:** Michael Brown, Youth Rehabilitative Counselor Supervisor, New Castle County Detention Center, Division of Youth Rehabilitative Services

**Type of Complaint:** Sexual Harassment

**Date of Complaint:** September 29, 2003

**Allegations:** Sexual harassment by Mr. Brown. Violation by Mr. Brown of agreements to cease harassing Dr. Marquis.

**DSCYF has concluded its investigation of this complaint and renders the following:**

[X] The Affirmative Action allegations made in the complaint were substantiated by the internal investigation. Recommendations for action have been made to the appropriate Division officials.

[ ] The Affirmative Action allegations made in the complaint were not substantiated by the internal investigation.

On behalf of the Department

Norwood J. Coleman, Sr. *N⁻*          September 29, 2003

Affirmative Action Representative          Date

000094

A00035

**DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES**

**AFFIRMATIVE ACTION COMPLAINT**

### Report

| | |
|---|---|
| **Complainant:** | Anne Marie Marquis, Ph.D., Psychologist, New Castle County Detention Center |
| **Respondent:** | Michael Brown, YRC Supervisor |
| **Type of Complaint:** | Sexual Harassment |
| **Date of Complaint:** | May 15, 2003 |
| **Allegations:** | See #1 in Facts section (Information in that section comes from Dr. Marquis' written statement.)  Sexual harassment by Mr. Brown continuous over a four year period.  Violation by Mr. Brown of agreements to cease harassing Dr. Marquis. |
| **Investigation Procedures:** | Interviewed Dr. Marquis, Mr. Brown, Mr. Harrington, Ms. Levis |

**Findings:**

1.  "I have been sexually harassed by Michael D. Brown (currently a YRC Supervisor on A Shift) & continue to be harassed at present."

"Since July, 1999, I have been harassed in one form or another by Michael D. Brown...."  "He would express that he would like to perform oral sex on me, saying that he wanted to *'eat my pussy'*."  Dr. Marquis indicated that Mr. Brown has made comments about seeing her in "Spandex".  Numerous other allegations were cited in a seven page written document submitted to supplement Dr. Marquis' complaint. Recent to the signing of this complaint, Dr. Marquis indicate that an agreement to cease the harassment was reached between she and Mr. Brown in August 1999.  Dr. Hadden, Dr. Marquis' supervisor at the time, brokered this agreement.  Dr. Marquis asserts that Mr. Brown never ceased harassing her.  She asserts that his behavior only became subtler.  Among many, Dr. Marquis cites one example of this continuing behavior.  In July 1999, Dr. Marquis alleges Mr. Brown "took the hand-held metal detector and ran it up and down my body in a sexual way."  Dr. Marquis alleges that because of a continuing pattern of harassment, she grew to be frightened and suspicious of any interaction with Mr. Brown.  She further indicates that when Mr. Brown became a supervisor and moved to a different shift, C shift, she had less interaction with him, but continued to grow frightened of any interaction with him.

Dr. Marquis asserts that when Mr. Brown moved back to the A shift, this brought her back into contact with him and despite telling him that she wanted nothing to do with him, he found ways to interact with her under the guise of work.  Dr. Marquis indicated that in August 2003, she requested a meeting between Mr. Brown and Earle Harrington, Acting Superintendent of the New Castle County Detention

A00036

Center at the time. At that meeting, Mr. Brown "admitted to having made the comments to me about wanting to see me in spandex and he apologized for this. He admitted to having cornered me in my office the one time in several years when I came into the building on the weekend when he was AOD." Dr. Marquis indicated at this meeting that other men at NCCDC had acted in ways that she felt was sexually harassing to me, but "they stopped the sexual harassment when I asked them to stop. Mr. Michael Brown was different. He did not stop when I asked him to stop. And, he continues to force unnecessary verbal responses from me."

2. Mr. Brown admitted to this investigator that he agreed that his behavior toward Dr. Marquis might have been sexually harassing at the time that he, Dr. Hadden and Dr. Marquis met in 1999. He agrees that despite his agreement to not continue harassing Dr. Marquis, he continued to attempt friendly interactions with her at the same time that she indicated she wanted no relationship with him other than a strictly business relationship. Mr. Brown further admits that even after the August 2003 meeting between he, Mr. Harrington and Dr. Marquis, he attempted "friendly" business related and non-business related interactions with Dr. Marquis despite her repeated protests.

3. Ms. Settles indicated that Mr. Brown had made remarks to her that she interpreted as sexual and that she felt were harassing. Ms. Settles indicated that the harassment in the form of comments and looks began around December 2000 and continued in to 2001 until she moved to another shift. She reported that Mr. Brown made comments such as referring to her as "Brown Sugar" and you are "so chocolate." Ms. Settles indicated that some of these comments occurred in front of both students and staff at NCCDC. She indicated that she told him if he continued, she would tell his wife. Ms. Settles indicated that Mr. Brown would look at her as if he were undressing her with his eyes and would sometimes mouth the words, "I love you." Ms. Settles indicates that the harassment stopped when she moved to the B Shift. Later she transferred to the Terry Center. She indicates that the move to the Terry Center had nothing to do with Mr. Brown's behavior. When asked why she did not report Mr. Brown's behaviors, Ms. Settles indicated that she believed management "would not do very much, just cover up [Mr. Brown's behavior]." Ms. Settles indicates that "someone else on his shift and under his supervision", experienced similar problems but also declined to report the behaviors.

4. Interviewed Mr. Brown and Earl Harrington, April 29, 2003. Mr. Brown acknowledged Dr. Marquis's concerns and admitted that he had entered into an

agreement with Dr. Marquis and Dr. Haddon to stop harassing Dr. Marquis. Mr. Brown also admitted attempting to get friendly with Dr. Marquis again. Mr. Brown and Mr. Harrington acknowledge that they entered into a new agreement in which Mr. Brown acknowledge that he may have violated the earlier agreement respect Dr. Marquis' boundaries. He admits that he may have continued to violate her boundaries. Mr. Brown says he was only trying to be friendly.

**Conclusion:**      Mr. Brown did sexually harassment Dr. Marquis.

**Recommendations:**

1. Because an agreement to refrain from harassing Dr. Marquis is in place and Mr. Harrington is and has been monitoring this plan, the recommendation for discipline at this time is for a letter of reprimand.

2. If further instances of harassment continue, progressive and severe discipline should be imposed upon Mr. Brown.

3. Mr. Brown should attend a sexual harassment awareness and prevention course.

Norwood J. Coleman, Sr.

September 29, 2003

To:     Marquis Anne M (DSCYF)
Cc:     Smith Karen R (DSCYF)
Subject:    RE: Request for your help.

Sensitivity:        Confidential
Anne Marie,

        I have scheduled an appointment for us to meeting, Monday, May 12th,
2:00PM.  Please send your information over before this meeting, if you wish.  In
light of our last conversation, I would like to invite Karen Smith to join us
for this meeting if her schedule permits.  Take care and thank you for your
concern and understanding Friday when I had to cancel our appointment for health
reasons.

    -----Original Message-----
From:       Marquis Anne M (DSCYF)
Sent: Monday, May 05, 2003 8:54 AM
To:   Marquis Anne M (DSCYF); Coleman Norwood J (DSCYF)
Subject:    RE: Request for your help.
Sensitivity:    Confidential

I am ready to schedule an appointment to turn in and discuss my affirmative
action complaint.  Please let me know when this would be convenient for you.
Because this has been so stressful, I may turn it in prior to our meeting just
so that I can feel like this part of the process has been completed.  I regret
that we could not do this on Friday as today is the first day for our new
superintendent in her new position, and the timing is unfortunate.

Hope you are feeling better, Anne-Marie

    -----Original Message-----
From:       Marquis Anne M (DSCYF)
Sent: Thursday, April 24, 2003 9:46 AM
To:   Coleman Norwood J (DSCYF)
Subject:    RE: Request for your help.
Sensitivity:        Confidential

I'll see you in your office for our appointment today at 3:30pm.

    -----Original Message-----
From:       Coleman Norwood J (DSCYF)
Sent: Thursday, April 24, 2003 9:36 AM
To:   Marquis Anne M (DSCYF)
Subject:    RE: Request for your help.
Sensitivity:        Confidential

REPLY:

        Anne Marie, please give me a call at 633-2529.  I will be out of the
office Friday and Monday.  You may call me at home also:  998-3867.

    -----Original Message-----
From:       Marquis Anne M (DSCYF)
Sent: Wednesday, April 23, 2003 3:36 PM
To:   Coleman Norwood J (DSCYF)
Cc:   Harrington J E (DSCYF)
Subject:    FW: Request for your help.

**000099**                                                      A00039

Sensitivity:        Confidential

Norwood,

May I please make an appointment with you to discuss a problem I am having with
a co-worker as per my supervisor's suggestion?  Thanks.

    -----Original Message-----
From:        Harrington J E (DSCYF)
Sent: Wednesday, April 23, 2003 3:07 PM
To:  Marquis Anne M (DSCYF)
Cc:   Smith Karen R (DSCYF)
Subject:     RE: Request for your help.
Sensitivity:        Confidential

I would suggest that you make an appointment with Norwood Coleman for
harrassement. If you are not comfortable doing this please let me know as I will
do it.  I will talk to Mr. Brown about his forced friendliness.  I was not aware
of your medical/emotional symptoms.

    -----Original Message-----
From:        Marquis Anne M (DSCYF)
Sent: Wednesday, April 23, 2003 1:28 PM
To:  Harrington J E (DSCYF)
Subject:     Request for your help.
Sensitivity:        Confidential

At about 11:55am this morning, I came out of my office to get documents off of
the printer. Mike Brown asked me, "How are you doing, Doc?"  I did not respond
as I have made it as clear as possible that his forced friendliness is not
welcome in light of his history of sexually harassing me when I was a new
employee here.  This was discussed amongst the three of us on Friday, April 11,
2003.

Today when this occurred, Maria Rivera was at her desk  when he engaged in
forced friendliness and she was not on the phone so she may have heard him ask
me this question.  I do not know if she did or not, or if she did, if she would
be aware of the significance of it.  I have not discussed this situation with
her, but do know that she is a significant member of the administrative
grapevine, so she may understand the significance of his question.  I got my
document off of the printer and then decided to leave the building for lunch as
his continued disrespect and insensitivity toward me and how I feel made me both
anxious and angry.  He then proceeded to follow me, catching up to me at door
511.  I called for the staff at admissions to open door 511 before he reached
the door.  He proceeded to unlock the door anyway.  Someone else came through
door 511 as I was exiting.  I was too distressed at this point to remember who.
Mike Brown did not come through the door.  He appeared to have followed me down
the hallway just to unlock the door for me.  I am sure that this would be on the
video tape if there is any question as to whether or not this happened.

His continued forced friendliness is unwelcome.  I do not know how to be any
more clear about this than I have been.  I have talked about it with you on an
individual basis and with him and you in the group meeting on 4-11-03.  His
unwelcomed forced friendliness causes me stress, to say the least, and I have
been having both medical and emotional symptoms in relation to his behavior.
These symptoms have necessitated that I use sick leave and spend money on
medical expenses such as prescriptions drugs, some of which have caused other

illnesses and medical conditions.  I want his unwelcomed forced friendliness to stop.

I have shown you recently that I can work with him on a professional basis.  For example, you requested my assistance with revising a policy on 4-21-03.  I came into your office and helped you revise this policy in the presence of you, Mr. Roger Hause, and Mr. Mike Brown.  Other related professional issues were discussed.  In fact, Mr. Brown was quite active and vocal while in your office.  And, I believe that I was able to help you with your policy revision in a satisfactory manner.

I would like to meet with you to discuss this.  While what I am complaining about above may seem petty to you, I have experienced  the phenomenon of the "slippery slope" with him over the years, and I want his forced friendliness to stop now before it turns into a more blatant type of harassment.  I do not want to meet with him again at this time.  Meeting with him is a demeaning and humiliating experience as he verbally interrupts me and overpowers/dominates the dialogue.  In addition, I am tired of listening to his lies and excuses for his behavior.  And, my presence does not ever seem to add to the success of the intervention.


Thank you in advance your considering this matter.

Sincerely,

Anne-Marie Marquis, Ph.D.
Clinical Psychologist

A00041

To:    Marquis Anne M (DSCYF)
Cc:    Smith Karen R (DSCYF)
Subject:    RE:

Sensitivity:        Confidential
Anne Marie,

        Thanks.  I have the package.  I shall get back to you about rescheduling
our appointment.

Norwood J. Coleman, Sr.
(302) 633-2529 - Office
(302) 633-2735 - Fax
norwood.coleman@state.de.us - e-mail


    -----Original Message-----
From:        Marquis Anne M (DSCYF)
Sent: Wednesday, May 07, 2003 3:43 PM
To:    Coleman Norwood J (DSCYF)
Subject:
Sensitivity:        Confidential

I turned in my affirmative action complaint forms and attachments to Karen Smith
at Noon today.  You were not in your office, and Karen was next door, so I gave
them to her.  She kindly stated that she would deliver them to you.  Would you
please let me know when you have received them?  Thanks.

A00042

ATTACHMENT A

FORM AA #1

DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES

AFFIRMATIVE ACTION COMPLAINANT FORM

Date of Inquiry: _____

1. Employee: _Anne-Marie Marquis_ Job Title: _Child Psychologist_

2. Age: _40_    DOB: _12-25-62_ Color: _Caucasian_ Race: _Mixed_

   Disability: _n/a_    Sex: _Female_ Religion: _n/a_

3. Division: _Youth Rehabilitative Services_

4. Location: _New Castle County Detention Center_

5. National Origin: _American_    Sexual Harassment: _yes_

   Retaliation/Reprisal: _?_

6. Description of Complaint(If use additional sheets if needed.)

   _I have been sexually harassed by Michael_
   _D. Brown (currently a YRC supervisor_
   _on A shift) & continue to be harassed at present._

6. Has a grievance or an appeal been filed on the same matter?

   Yes: _____    No: _X_    If "yes," what is the status? _____

7. Action taken on this complaint:

   _I have spoken to Mr Brown individually on_
   _several occasions. Two supervisors & I have_
   _met w/ him in meetings as well - see attached documents_

   _AMMarquis_ Complainant    _4-29-03_ Date

   _Norwood J. Coleman, Sr._
   Affirmative Action Representative    _5-12-03_ Date

AA FORM #1 A:AA-COMP.FRM (Retyped: NOV., 1993)

## Affirmative Action Complainant Form—Attachment

**Description of Complaint:** Since July, 1999, I have been harassed in one form or another by Michael D. Brown, with the harassment beginning as sexual harassment when I was a new hire at NCCDC. When we first met, he was working as a "mobile", and his job was to bring children/residents to me. My first day of employment was 6-16-99. The harassment began in mid July, 1999, with verbal comments that began with statements like "I wish I could see you in Spandex", and escalated to repeated use of vulgar language of a sexual nature. For example, he would express that he would like to perform oral sex on me, saying that he wanted to "eat my pussy." Or, he would say something like "I wonder what you taste like." When he became more sexually explicit, I remember thinking that I could not believe that he would use language like this to try to seduce a woman, and I wondered if he had ever been successful in seducing women talking to them the way he was talking to me. In all of my previous employment settings, no man had ever used such explicit and vulgar sexual language with me. I certainly was not interested in him sexually or having him talk to me about anything flirtatious/sexual, and I told him I was not interested in any further type of interaction like this between us. It later occurred to me that same day that he might even be talking this way and be married at the same time, which angered me even further. The next day I saw him, he was continuing to leer at me and make non-verbal sexual overtures. We were standing by the phone on the classroom side of door 511. I asked him if he were married. He said that he was married. I asked him how he could come on to a woman the way he had come on to me and be married? I was very angry about this, but he ignored my anger. He continued to express that he found me attractive and that he was interested in me sexually. I told him that I would never be interested in him sexually, and I asked him to leave me alone. He did not honor my request. Even though I actively avoided him, for another week or so, he continued to pursue me, though not in such a verbally vulgar manner. For example, he found me between units E and F and leered at me and he told me that he still wanted to see me in Spandex. Several days later, when I was entering the building one day after lunch, and was carrying several cups of Ritas Water Ice, he asked me "Where's mine?" He did this on the building's front porch in front of other people. I chose not to embarrass him then in front of others, but later on an individual basis, I told him not to ask me for food or drinks because I did not feel like I would ever want to give him anything. A few days later, he asked me for money to contribute to a charity. Again, I asked him not to ask me for anything because I did not feel generous or friendly toward him and did not want to give him anything. During the next several days, Mr. Brown was mildly hostile toward me, but he did not ask for anything further.

On Saturday, July 31, 1999, I came to work in the afternoon. Parents had arrived for visitation and Mr. Brown was in the process of using a metal detector wand to search them for contraband prior to allowing them further into the building for visitation. I stepped aside to let the parents all enter the 600 corridor first. As I was about to pass through door 600B, Mr. Brown turned his back to the parents who were now all between door 600B and 600A, and he turned toward me as I was about to pass through door 600B. He raised the metal detector wand and then proceeded to wave it about an inch from my body over my breasts and genital area. He smiled and sexually leered at me while doing

this. I stood there in disbelief that he would engage in such inappropriate behavior with a group of parents right on the other side of him. He did this in a manner to where his body blocked the view of the parents as he is rather tall and he weighed considerably more then than he does now (his large body blocked their view). I did not say anything. I felt scared, horrified and paralyzed by his behavior. He turned around and let the parents out of the 600 door corridor and then turned back to me and made the same sexual gestures he had just made with the metal detector wand. He looked sexually aroused by his behavior, smiling and leering at me.

It was after this incident that I knew that I would have to do something besides confronting Mr. Brown on an individual basis because my previous interventions had not been successful in stopping his behavior, and if anything, I thought that his behavior was escalating as he had done something physical in a risky situation (with parents standing just on the other side of him). In a supervision session with my clinical supervisor, Dr. Andy Hadden, on 8-3-99, I told Dr. Hadden that I was being sexually harassed by Mr. Brown. Dr. Hadden listened as I told him what all had transpired. Later in the day, Dr. Hadden told me that there were two options: the three of us could meet to discuss my complaint; if I were uncomfortable in doing this, Dr. Hadden said he would meet with Mr. Brown himself. I told him that I wanted to think about what option to take. The next day, I told Dr. Hadden that even though I was very uncomfortable about meeting with Mr. Brown, I would participate in the meeting. Having been a victim of rape in the past, it is a very stressful and scary situation for me to confront the "perpetrator", but I knew that doing so was probably the best thing for several reasons. Therefore, I decided to attend the meeting if I could tolerate the process at all.

On or about 8-4-99, Mr. Brown, Dr. Hadden, and myself met in my office to discuss Mr. Brown sexually harassing me. I had prepared the following to read out loud in the meeting:

"We are having this informal meeting because I need to talk to you about some things. I'm feeling uncomfortable about this so I asked Dr. Hadden to join us. On Saturday, July 31st, I came up to work in the afternoon and you did something that made me feel very uncomfortable. You took the hand-held metal detector and ran it up and down my body in a sexual way. This type of response from you is unwanted and it creates a hostile work environment for me. By definition, this is sexual harassment. And, you did it twice. It was offensive. During my first month or so of working here, you also made progressively inappropriate and sexual remarks about my appearance. This, too, meets the definition for sexual harassment. However, I asked you to stop making the sexual remarks and you did (briefly, the harassment had stopped). If the sexual harassment with the metal detector had not happened, I might have been able to feel more friendly to you and perhaps do something like contribute money to a charity. In light of the sexual harassment with the metal detector, however, I feel uncomfortable to be around you and I certainly don't feel like bringing you a raspberry icy or water ice, or give you money for anything, or give you anything at all.

A00045

In addition, you have acted rejected/dejected by me at various times, and I see you treating the kids you are bringing up here to me in an overly hostile manner, and this is also disturbing. I imagine that you are mad at me because I have made it very plain that I am not interested in you. It bothers me that you seem to be taking this out on the kids here.

I would like for us to have a polite and cordial working relationship up here, but that is absolutely all I am interested in. Please do not flirt with me or ask me to give you things in the future, as this makes me uncomfortable.

At this point (in August, 1999), I'm not thinking of filling out a sexual harassment complaint. I hope that we can have a good working relationship in the future. Thank you for listening."

This ended the speech I had prepared to recite to Mr. Brown. I had read it out loud to Dr. Hadden prior to meeting with Mr. Brown to practice reading it. During the meeting with Mr. Brown, however, I had great difficulty making it through the entire speech as he immediately became defensive, aggressive and hostile, denying that he had done anything and interrupting me each time I attempted to speak. He denied everything, and the meeting was very uncomfortable. He ended up storming out of the office.

In the days to come, Dr. Hadden appeared to take Mr. Brown's side in this matter. Dr. Hadden, once every week or so for a while, would tell me that Mr. Brown was asking him (Dr. Hadden) if he still had to be "careful" about what he (Mr. Brown) said to me. Dr. Hadden acted as if he did not know the answer himself and was asking me if Mr. Brown still had to be careful. This made me angry and I told Dr. Hadden, "Yes, Mr. Brown has to be careful about what he says to me." Initially, I asked Dr. Hadden, "Doesn't him asking this question at all send you a red flag that he does not understand?" Dr. Hadden did not seem to understand the significance of Mr. Brown even asking this question.

It is my perception that my relationship with Dr. Hadden suffered as a result of my reporting this complaint, and increasingly, I saw signs that Dr. Hadden "sided" with Mr. Brown. For example, in front of me, Dr. Hadden would call Mr. Brown, "King", "Chief", and "the Man" or "You the Man". I found this intimidating and demeaning, as Dr. Hadden clearly was aligning himself with Mr. Brown and against me. By September 13, 1999, my relationship with my supervisor, Dr. Hadden, had become full of hostility, which at least partially seemed to be associated with my having complained about Mr. Brown's sexual harassment. During September, 1999, Dr. Hadden frequently called Mr. Brown by positive "pet" names. In the meantime, he had begun to document what I was doing. There were time during our supervision sessions when he appeared to be writing down what I was saying word for word. He began to carry around a large supervision file with his documentation on me. I felt threatened by Dr. Hadden at this point.

Since Dr. Hadden no longer appeared to be my advocate in this matter, I did all that I could to avoid Mr. Brown. My relationship with my supervisor continued to deteriorate.

A00046

I thought about calling Norwood Coleman (EEOC) and did call once, leaving a message. When he called me back, however, I was too fearful of retaliation (I was afraid of losing my job) and that Mr. Coleman would not believe me to discuss the matter with him.

I was angry when Mr. Brown was made "employee of the quarter" for April-June 2000. Soon after, he was promoted to supervisor. There was one good thing about this, however, in that he was moved to C Shift, so I had relatively little contact with him. It was more pleasant for me because I did not have to actively avoid him all of the time.

Several women and I have talked about Mr. Brown's sexual harassment of women over the past several years. Some of these women are Levise Settles (YRC), Janet Oliver, and Sheila Green (both teachers at the time), and we have all talked about having been sexually harassed by Mr. Brown, although none of us ever filed a formal complaint until I am choosing to do so now. I mention these women because I fear that I do not have "proof" that he sexually harassed me, and perhaps if a pattern of his unwanted behavior could be established by the testimony of others, it would lend credibility to my complaint. I have spoken in the last week or so to both Ms. Oliver and Ms. Settles about whether or not they would be willing to talk to Mr. Norwood Coleman or anyone else investigating my complaint, and they have both said that they would. Ms. Settles told me that she also experienced repeated sexual harassment from Mr. Brown that did not stop when she requested that he stop. She stated that she finally enlisted the help of two male friends, Mr. McNeil and Mr. P.J. Hines (both currently YRC's at NCCDC), to have them talk to Mr. Brown and to have them ask him to stop sexually harassing her. She states that after they confronted him about sexually harassing Ms. Settles, he would stop for a while, but that then he would start up again. She states that she finally threatened to tell his wife, and that this is what seems to have made him stop harassing her.

I have not been able to speak to Ms. Sheila Green since she left NCCDC. At this time, I am not in a position to reveal the names of any other women who may have also been victims of sexual harassment by Michael Brown. Ms. Settles may have obtained permission, however, to do so.

Again, even though Mr. Brown was moved to C shift, I still tried to avoid him for fear that he would continue to sexually harass me. For example, if I knew that he were the Administrator of Duty (AOD), I would not come into the building to work on the weekends if I knew he were here, "in charge", and have the possibility of being in my office, which is in the administration area when no others would be around. There was, however, one weekend when I did come into the building when he was AOD. At this point in time, I am not sure when this was, but believe it was a weekend in 2001. I had forgotten something in my office and had to get it prior to Monday morning. And sure enough, when Mr. Brown found out I was in my office, he approached me. There was no one else in the administration area and I felt cornered and trapped in my office as he stood in the doorway and proceeded to rationalize his former behavior. He initiated his monologue about his past sexual harassment, and was basically trying to get me to forgive him. He showed, however, no empathy for me or how he had or was making me feel. He continued to rationalize his former behavior as I was literally in tears. He told

A00047

me about how he had been so stressed out about being promoted to supervisor that he had lost a lot of weight. He told me that he just wanted to be friends and be able to talk to me like everybody else, about sports, etc. I told him that I did not feel friendly toward him and that I did not ever want to talk to him about sports or anything else of a friendly nature. I told him that I did not ever want to give him anything and that I wanted him to leave me alone. I was in tears at this point, but he kept pressing the subject. Finally, he gave up. I vowed never to be in the building again when he was AOD and there would be no one else in the administration area. He has not ever seemed to hear what I say or listen to me, and I feel afraid of him. Even with me crying, he kept pressing the issue. His persistence, lack of empathy, and inability to hear me and respect me scare me.

When I learned that he would be moving to A shift this year, I was very disturbed. I mentioned several times to my then current supervisor, Mr. Earl Harrington, that Mr. Brown had sexually harassed me in the past and that I was worried about having to work on the same shift with him. To Mr. Harrington's credit, I was able to broach this topic at all. Mr. Harrington told me not to worry about it, and that if when Mr. Brown moved to A shift there was a problem, I should tell him and he would handle it.

I think that the recent major changes in supervisors and their schedules took place on 3-17-03. It is my understanding after overhearing others talk that Mr. Brown did not read his email, so even though he was supposed to have started working on A shift on 3-17-03, he started the following week.

In light of the horrendous history that he and I have had, he immediately began to force friendliness on me, and I was very uncomfortable with this. I did not respond to him in any way that would give him any indication that I wanted to talk to him, and yet he continued to force friendliness on me. I tried to avoid him, but he seemed to be everywhere, especially just outside of my office. For example, he would speak to me and ask me non-work related questions virtually every chance he had. He would ask me for help on the computer, which meant that I would have to get close enough to the computer screen to see what was on the screen, and I would have to get close to him. I am not comfortable being that close to him. On 4-3-03, I had brought some lunch to help belatedly celebrate Ed Boyer's birthday and Mr. Harrington, Mr. Boyer, Ms. Patterson, Ms. Rivera and I were eating lunch in the conference room. After Mr. Harrington left, and in the presence of Mr. Boyer and Ms. Patterson, Mr. Brown came into the conference room, saying things like "I want to be part of this", "I want in on this". He asked me if I made the pie. In light of our horrendous history together, I cannot imagine how he could have the nerve to intrude on a private lunch and ask me for food. It makes me wonder how many times I have to tell him to leave me alone, I do not want to give him any food, or anything, etc. I have told him all of this before over a period of years.

Mr. Harrington, who was both of our supervisors at this time, noticed during the next week that when I was in Mr. Harrington's office and Mr. Brown entered, I soon left his office. Mr. Harrington told me that he thought that there was a problem and that we had two options: the three of us could meet to discuss the problem; or, if I were uncomfortable with meeting with Mr. Brown, Mr. Harrington would meet with him

A00048

without me present. I told him that even though it would be very uncomfortable for me to meet with Mr. Brown, I would do so. We met on 4-11-03.

Prior to this meeting, I consulted with Mr. Norwood Coleman (EEOC) on 4-10-03, and he helped me to formulate what I wanted to express to Mr. Brown. When I told him that I was afraid of retaliation for making the complaint, Mr. Coleman told me how this would be a federal offense. Mr. Coleman advised me to tell Mr. Brown that "I only want to have the most minimal professional relationship and interaction with you" and that "I do not welcome your attempts to reconstruct a friendly relationship. I do not want any type of personal relationship with you." I said these things to Mr. Brown in the presence of Mr. Harrington on 4-11-03.

During the meeting on 4-11-03 with Mr. Harrington, Mr. Brown, and myself, Mr. Brown admitted to having made the comments to me about wanting to see me in spandex and he apologized for this. He admitted to having cornered me in my office the one time in several years when I came into the building on the weekend when he was AOD. He admitted that he could see how I would feel threatened by him standing in my doorway because of his large size and strength. He admitted that he had not and was not listening to me because he wanted to prove to me that he was a "nice guy". He admitted that he and Dr. Hadden and I had met back in 1999. As in the meeting with Dr. Hadden, he became hostile and he verbally interrupted me and over-powered me many times when I was trying to express myself. Mr. Harrington did a better job than Dr. Hadden at getting Mr. Brown to stop interrupting me and letting me express my thoughts and feelings. I told Mr. Brown that his forced friendliness made me feel uncomfortable and threatened. I told him that I felt disrespected by him because he has never respected my requests of him to leave me alone and not ask me for things. He said that he does not listen to me because he wants to prove to me that he is a "nice guy".

During this meeting on 4-11-03, he admitted to having used the metal detector wand on me on 7-31-99 twice, but denied that there was anything sexual about what he did. He said that he did this as a "joke." Since I am an employee here, there was no reason for him to use the metal detector wand on me at all. And again, at this point, there were already several occasions when I had asked him to stop sexually harassing me.

During the meeting on 4-11-03, Mr. Brown also tried to rationalize his behavior by telling me that he had seen "other guys sexually harassing you, and you don't do anything about them." I told him that, yes, other men in this building (employees) have sexually harassed me. I told both Mr. Brown and Mr. Harrington that the reason I had never reported them was that **they stopped the sexual harassment when I asked them to stop. Mr. Michael Brown was different. He did not stop when I asked him to stop. And, he continues to force unnecessary verbal responses from me.**

This is a crucial part of my complaint, and is what is largely responsible for the fear and anger I feel when he initiates unnecessary interactions with me. I have not initiated one conversation with this man in years, and he forces verbal unnecessary exchanges between us even still, with two of these occurring on 5-6-03.

A00049

During the meeting on 4-11-03, we all agreed that Mr. Brown was not to talk to me about non-work issues. He was not to make friendly conversation with me or try to reconstruct a friendly relationship. He was only to speak to me when work required it. If he needed help on the computer, he was requested to ask someone else to help him with the computer as I am not comfortable getting that close to him.

On 4-23-03, Mr. Brown broke this agreement. I sent the following email to Mr. Harrington on 4-23-03 and will provide you a copy as an attachment:

"At about 11:55am this morning, I came out of my office to get documents off of the printer. Mike Brown asked me, "How are you doing, Doc?" I did not respond as I have made it as clear as possible that his forced friendliness is not welcome in light of his history of sexually harassing me when I was a new employee here. This was discussed amongst the three of us on Friday, April 11, 2003.

Today when this occurred, Maria Rivera was at her desk when he engaged in forced friendliness and she was not on the phone so she may have heard him ask me this question. I do not know if she did or not, or if she did, if she would be aware of the significance of it. I have not discussed this situation with her, but do know that she is a significant member of the administrative grapevine, so she may understand the significance of his question. I got my document off of the printer and then decided to leave the building for lunch as his continued disrespect and insensitivity toward me and how I feel made me both anxious and angry. He then proceeded to follow me, catching up to me at door 511. I called for the staff at admissions to open door 511 before he reached the door. He proceeded to unlock the door anyway. Someone else came through door 511 as I was exiting. I was too distressed at this point to remember who. Mike Brown did not come through the door. He appeared to have followed me down the hallway just to unlock the door for me. I am sure that this would be on the video tape if there is any question as to whether or not this happened.

His continued forced friendliness is unwelcome. I do not know how to be any more clear about this than I have been. I have talked about it with you on an individual basis and with him and you in the group meeting on 4-11-03. His unwelcomed forced friendliness causes me stress, to say the least, and I have been having both medical and emotional symptoms in relation to his behavior. These symptoms have necessitated that I use sick leave and spend money on medical expenses such as prescriptions drugs, some of which have caused other illnesses and medical conditions. I want his unwelcomed forced friendliness to stop.

I have shown you recently that I can work with him on a professional basis. For example, you requested my assistance with revising a policy on 4-21-03. I came into your office and helped you revise this policy in the presence of you, Mr. Roger Hause, and Mr. Mike Brown. Other related professional issues were discussed. In fact, Mr. Brown was quite active and vocal while in your office. And, I believe that I was able to help you with your policy revision in a satisfactory manner.

I would like to meet with you to discuss this. While what I am complaining about above may seem petty to you, I have experienced the phenomenon of the "slippery slope" with him over the years, and I want his forced friendliness to stop now before it turns into a more blatant type of harassment. I do not want to meet with him again at this time. Meeting with him is a demeaning and humiliating experience as he verbally interrupts me and overpowers/dominates the dialogue. In addition, I am tired of listening to his lies and excuses for his behavior. And, my presence does not ever seem to add to the success of the intervention.

A00050

Thank you in advance your considering this matter.

Sincerely,

Anne-Marie Marquis, Ph.D.
Clinical Psychologist"

Mr. Harrington replied with an email suggesting that I make an appointment with Norwood Coleman for harassment, which I did.

It has not been an easy thing to relive and remember the details of the harassment I have endured by Mr. Brown during my employment at NCCDC. It is easy to see why other women who have been sexually harassed by Mr. Brown have not filed formal complaints. Doing so is very stressful. In addition, I am afraid of both professional and social consequences. I am afraid people do not believe me, in particular my supervisors/superiors. Some co-workers are already treating me differently. Some even appear to be testing me out to see if they push the boundaries with me if I would charge them with sexual harassment.

I have been told by Mr. Harrington and Mr. Coleman that the statue of limitations has run out for a sexual harassment complaint, although I could file a harassment complaint. I have consulted with the Department of Labor about this matter, and they stated that they wanted to investigate this case, saying that there has been an ongoing process of harassment by Mr. Brown which has been interrupted only by a change in his working hours and my active avoidance of him. The investigator with whom I spoke said that the statute of limitations had not run out because the harassment had never really stopped. I hope that there will be some type of investigation because I am not the only victim, I may just be the only one willing to file a formal complaint. Thank you for your attention to this matter.

Sincerely,

*Ammerqnts, PhD*

Anne-Marie Marquis, Ph.D.
Clinical Psychologist

A00051

**Marquis Anne M (DSCYF)**

| | |
|---|---|
| **From:** | Marquis Anne M (DSCYF) |
| **Sent:** | Tuesday, May 06, 2003 5:15 PM |
| **To:** | Harrington J E (DSCYF) |
| **Subject:** | FW: |
| | |
| **Sensitivity:** | Confidential |

There was another instance today when Mr. Michael Brown spoke to me when I do not think it was necessary or usual...I sent this email below to myself so that I would have a record of it.

I rarely use the FAX machine and do not leave paperwork over there...whatever it was he was trying to get my attention about was not mine. I perceive that he is still forcing me to make conversation with him. I will be turning in my formal written affirmative action complaint to Norwood Coleman tomorrow, 5-7-03, and will let you know when this has actually happened. I will also tell my new supervisor, Ms. Bryson, when there is a convenient opportunity. Thank you for your help with this matter.

-----Original Message-----

| | |
|---|---|
| **From:** | Marquis Anne M (DSCYF) |
| **Sent:** | Tuesday, May 06, 2003 1:36 PM |
| **To:** | Marquis Anne M (DSCYF) |
| **Subject:** | FW: |
| **Sensitivity:** | Confidential |

I just walked out of Ms. Bryson's office and he was standing at the FAX machine. He asked me if something on the FAX machine was mine.

-----Original Message-----

| | |
|---|---|
| **From:** | Marquis Anne M (DSCYF) |
| **Sent:** | Tuesday, May 06, 2003 8:57 AM |
| **To:** | Harrington J E (DSCYF) |
| **Subject:** | |
| **Sensitivity:** | Confidential |

At about 9:00am, Mr. Michael Brown just came to my office to tell me that "they" had caught the error on the shift briefing this morning. He did not go into details, knowing that I already knew about this situation. I had called Roger Hause to discuss the errors on the shift briefing report prior to sending the email about it and spoke with him about this at 8:00am this morning...he was unaware of it and thanked me for finding the error.

I do not see any reason for Mr. Brown to have just come to my office to discuss this with me. I think that he is looking for any opportunity at all to talk to me. First of all, I am the one who "caught" the error, so I already knew about it. Mr. Chris McIntyre witnessed this exchange.

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Harrington J E (DSCYF) | Read: 05/07/2003 8:30 AM |

A00052

**Marquis Anne M (DSCYF)**

---

**From:** Marquis Anne M (DSCYF)
**Sent:** Wednesday, April 23, 2003 1:28 PM
**To:** Harrington J E (DSCYF)
**Subject:** Request for your help.

**Sensitivity:** Confidential

At about 11:55am this morning, I came out of my office to get documents off of the printer. Mike Brown asked me, "How are you doing, Doc?" I did not respond as I have made it as clear as possible that his forced friendliness is not welcome in light of his history of sexually harassing me when I was a new employee here. This was discussed amongst the three of us on Friday, April 11, 2003.

Today when this occurred, Maria Rivera was at her desk when he engaged in forced friendliness and she was not on the phone so she may have heard him ask me this question. I do not know if she did or not, or if she did, if she would be aware of the significance of it. I have not discussed this situation with her, but do know that she is a significant member of the administrative grapevine, so she may understand the significance of his question. I got my document off of the printer and then decided to leave the building for lunch as his continued disrespect and insensitivity toward me and how I feel made me both anxious and angry. He then proceeded to follow me, catching up to me at door 511. I called for the staff at admissions to open door 511 before he reached the door. He proceeded to unlock the door anyway. Someone else came through door 511 as I was exiting. I was too distressed at this point to remember who. Mike Brown did not come through the door. He appeared to have followed me down the hallway just to unlock the door for me. I am sure that this would be on the video tape if there is any question as to whether or not this happened.

His continued forced friendliness is unwelcome. I do not know how to be any more clear about this than I have been. I have talked about it with you on an individual basis and with you and you in the group meeting on 4-11-03. His unwelcomed forced friendliness causes me stress, to say the least, and I have been having both medical and emotional symptoms in relation to his behavior. These symptoms have necessitated that I use sick leave and spend money on medical expenses such as prescriptions drugs, some of which have caused other illnesses and medical conditions. I want his unwelcomed forced friendliness to stop.

I have shown you recently that I can work with him on a professional basis. For example, you requested my assistance with revising a policy on 4-21-03. I came into your office and helped you revise this policy in the presence of you, Mr. Roger Hause, and Mr. Mike Brown. Other related professional issues were discussed. In fact, Mr. Brown was quite active and vocal while in your office. And, I believe that I was able to help you with your policy revision in a satisfactory manner.

I would like to meet with you to discuss this. While what I am complaining about above may seem petty to you, I have experienced the phenomenon of the "slippery slope" with him over the years, and I want his forced friendliness to stop now before it turns into a more blatant type of harassment. I do not want to meet with him again at this time. Meeting with him is a demeaning and humiliating experience as he verbally interrupts me and overpowers/dominates the dialogue. In addition, I am tired of listening to his lies and excuses for his behavior. And, my presence does not ever seem to add to the success of the intervention.

Thank you in advance your considering this matter.

Sincerely,

Anne-Marie Marquis, Ph.D.
Clinical Psychologist
**Tracking:**

| Recipient | Read |
|---|---|
| Harrington J E (DSCYF) | Read: 04/23/2003 3:03 PM |

A00053

**Smith Karen R (DSCYF)**

| | |
|---|---|
| **From:** | Bryson Shirley R (DSCYF) |
| **Sent:** | Thursday, June 17, 2004 10:18 AM |
| **To:** | Coleman Norwood J (DSCYF); Smith Karen R (DSCYF) |
| **Cc:** | Harrington J E (DSCYF) |
| **Subject:** | FW: Special Incident Report–Harassment/Retaliation by Mike Brown |
| **Importance:** | High |
| **Sensitivity:** | Confidential |

She meet with me to talk to me about this yesterday.  Mr. Harrington and I will be speaking to Mike Brown today about Dr. Marquis concerns.  Do you have any guidance or recommendation on this matter?

-----Original Message-----
**From:** Marquis Anne M (DSCYF)
**Sent:** Thursday, June 17, 2004 8:26 AM
**To:** Bryson Shirley R (DSCYF); Harrington J E (DSCYF)
**Subject:** Special Incident Report--Harassment/Retaliation by Mike Brown
**Importance:** High
**Sensitivity:** Confidential

This is the first special incident report for a series of aggressive/intimidating behaviors by Mike Brown directed toward me during the past week.  I am writing this one first because education staff witnessed the incident and one of the witnesses (Ms. Hannah) is currently in the building for a brief period and could be spoken to this morning.  She will be out of the building on school break for the next two weeks.

On Monday, June 14th, I approached the first locked door and was buzzed in.  When I entered the searching area, Mike Brown, Toby Greco, Ms. Hanna, and perhaps Mr. Schulties (I am not sure if he was there still or not), were in the area.  Mr. Brown was using the wand to perform searches.  When he turned around and saw me, he helled, "Get out of here!" and several other comments to the effect that he wanted me out.  Both the tone and volume of his voice were inappropriate (noticeably hostile, rude, aggressive, threatening).  In addition, his choice of words was rough and rude.

I am not completely sure, but I think Ms. Marchione was at the admission's desk.  When I was finally allowed to enter the search area again, Mr. Brown had Ms. Demonia ( I think, I am not completely sure) perform the wand duties.  Other witnesses may remember more.  The video camera would also give clear information about who did what to whom and how things happened in this harassing event.

Thank you for your help.  Please let me know if other information is needed about this event.  I will be sending additional special incident reports when time allows.

Anne-Marie Marquis, Ph.D.
Clinical Psychologist
New Castle County Detention Center
302-993-3990

A00054

6/17/2004

## Coleman Norwood J (DSCYF)

| | |
|---|---|
| **From:** | Coleman Norwood J (DSCYF) |
| **Sent:** | Tuesday, August 03, 2004 9:06 AM |
| **To:** | Marquis Anne M (DSCYF) |
| **Subject:** | RE: training materials for staff |
| **Sensitivity:** | Confidential |

Thank you. I am very pleased. Can I get your permission to share this message? I would like to use it in our AA Plan and in promoting more of this type of training. I will protect your identity. Once again, thanks. Bye the way, Darryl has said nothing to me. I would like to share this orally with Mr. Weaver, head of DOL's Mediation Program to support the concept of mediation. I'll call you about this.

-----Original Message-----
**From:** Marquis Anne M (DSCYF)
**Sent:** Tuesday, August 03, 2004 7:50 AM
**To:** Coleman Norwood J (DSCYF)
**Subject:** RE: training materials for staff
**Sensitivity:** Confidential

Thanks a lot...will appreciate any help I can get for this important project!

Part of how all of this has come about has been my awareness that the training you provided a few months ago on sexual harassment has made a noticeable impact on the YRC's behavior toward me (and even with one supervisor—Sessoms), so this is proof to me that training can have a positive influence. It is of comfort that several of the larger offenders have stopped treating me like a piece of meat and in other sexualized manners...all after that one training from you. I've been meaning to tell you about the positive difference your training made...at first, I didn't want to "speak too soon" for fear that the change wouldn't continue. About a month ago, however, in a meeting with the YRS psychologists and Darryl Dawson, I did mention in that group what a difference your training had made. Guess maybe it's safe to tell you as well...Thank you for all of your help!

Anne-Marie Marquis, Ph.D.
Clinical Psychologist
New Castle County Detention Center
302-993-3990

-----Original Message-----
**From:** Coleman Norwood J (DSCYF)
**Sent:** Monday, August 02, 2004 5:03 PM
**To:** Marquis Anne M (DSCYF)
**Subject:** RE: training materials for staff
**Sensitivity:** Confidential

Anne Marie,
    Let me look around. I may be able to pull from several sources to get some of the topics you require.

-----Original Message-----
**From:** Marquis Anne M (DSCYF)
**Sent:** Friday, July 30, 2004 11:05 AM
**To:** Coleman Norwood J (DSCYF)
**Subject:** training materials for staff
**Sensitivity:** Confidential

*State of Delaware*



# The Department of Services
# for Children, Youth and
# Their Families

| *Division of Management Support Services* | • | *Human Resources* | • | *(302) 633 - 2553* |

January 19, 2005

Thomas Smith
Department of Labor
Office of Labor Law Enforcement
4425 North Market Street
Wilmington, Delaware 19805

RE:    Marquis v. State of DE/DSCYF/DYRS/ New Castle County Detention Center
       Case no.: 0312201/17/CA400195

Dear Mr. Smith,

As we discussed yesterday, Tuesday, January 18, 2005, Dr. Marquis was offered and declined a position as a Child Psychologist within the Division of Youth Rehabilitative Services. The Department's records reflect that Dr. Marquis was interviewed on October 13, 2004 for the Child Psychologist position at Ferris School. Dr. Marquis was indeed offered the position by the hiring manager and Superintendent of Ferris, Greg Fuller and declined the offer.

In addition, Dr. Marquis was offered the unique opportunity to interview for a Child Psychologist position for two newly established programs within the Division. Initially Dr. Marquis accepted the offer to interview and was scheduled for that interview on November 19, 2004 @1:00. However, Dr. Marquis spoke with Darryl Dawson, Deputy Director for the Division on November 18, 2004 and declined the opportunity to interview.

As I indicated yesterday, Dr. Marquis is on the Department's active register of qualified candidates for Child Psychologist that will be utilized as vacancies occurs within the Department of Services For Children, Youth and Their Families.

Sincerely,

*Karen R. Smith*

Karen R. Smith
Human Resources Specialist

# ATTACHMENT #1

### Position Statement

## Anne Marie Marquis v. State of DE/DSCYF/New Castle County Detention Center
## Case No.: 0312201/17CA400195
## Charge of Sex Discrimination

In her charge letter, Anne Marie Marquis, Ph.D., admits that the Department of Services for Children, Youth and Their Families responded to all of her complaints of sexual harassment by Michael Brown, Supervisor, Division of Youth Rehabilitative Services, New Castle County Detention Center. She admits that in 1999, Andrew Hadden, Ph.D., her former supervisor, and Darryl Dawson, then Administrator of the New Castle County Detention Center, acted upon her complaint and that in the perception of Dr. Marquis, the "intimidation" stopped after Mr. Brown was moved to a different shift. Dr. Marquis further admits in her statement that the Department acted in Fall 2003 after an investigation of a complaint filed by her with the Department's Diversity, Equal Employment, Affirmative Action Administrator against Mr. Brown, by finding that Mr. Brown had sexually harassed her and had made recommendations for discipline. In the current complaint, Dr. Marquis' primary complaint is that while she was informed of the findings against Mr. Brown, she is unaware of the extent to which he has been disciplined.

It is the position of the Department, that with regard to the above charge, the Department of Services for Children, Youth and Their Families' did not discriminate against Dr. Marquis. As noted above and in Dr. Marquis' Charge of Discrimination, she did receive notification of a finding against Mr. Brown and was notified that appropriate disciplinary steps would be taken. The State of Delaware's Freedom of Information Act (29 Del. Code, Chapter 100, see appendix 4), deems non-public "Any personnel, medial or pupil file, the disclosure of which would constitute an invasion of personal privacy, under this legislation or under any State or federal law as it relates to personal privacy." Further, while State Merit Rules prohibit the Department from disclosing the specifics of personnel actions, appropriate and substantial discipline was taken by the Department against Mr. Brown or any other employee (see appendix 5). Further, in addition to the Department's on going training on Sexual Harassment Prevention Training, the Department carried out training on the State of Delaware's Policy Against Sexual Harassment and Sex Discrimination at the New Castle County Detention Center in May 2004.

As for Dr. Marquis's assertion that "Mr. Brown makes weekly attempts when I come out of my office to interrupt my path of travel and make his presence known as a form of intimidation" it should be noted that Dr. Marquis' office is in the Center's Administration Suite. As a supervisor, Mr. Brown is required to report to the Center's Administrator and Deputy Administrator on regular bases in that suite. Further, as part of

the agreement and recommendation due to the September 2003 Sexual Harassment Findings and previous agreement's between Dr. Marquis and Mr. Brown, it has been stipulated that communication between the two on normal business is permitted. Communication of a personal nature by Mr. Brown to Dr. Marquis is prohibited. Both the Center's Administrator and Deputy Administrator have monitored Mr. Brown's interactions with Dr. Marquis and found no violation of this agreement. Dr. Marquis, on the other hand, has complained several times that the very presence of Mr. Brown in the Administrative Suite, even when unplanned contacts are made, are offensive to her. Because of the nature of 24 hour juvenile detention work and facility construction, it would be impossible for them to completely avoid one another.

To conclude, the Department contends it did not discriminate against Dr. Marquis. On the contrary, Dr. Marquis admits that the Department responded to each of her complaints. Additionally, the Department has taken appropriate action against Mr. Brown as required by Department Policy and State Law. The Department believes it has gone beyond Dr. Marquis' expectations by increasing training and counseling Mr. Brown as to appropriate behavior. The Department recognizes Dr. Marquis' sensitivity and has done much to insure her comfort and to maintain a respectful workplace.

## Smith Karen R (DSCYF)

| | |
|---|---|
| **From:** | Harrington J E (DSCYF) [J.Harrington@state.de.us] |
| **Sent:** | Monday, June 28, 2004 4:54 PM |
| **To:** | Smith Karen R (DSCYF) |
| **Subject:** | RE: |

No he was not according to the records.

-----Original Message-----
**From:** Smith Karen R (DSCYF) [mailto:Karen.R.Smith@state.de.us]
**Sent:** Monday, June 28, 2004 4:29 PM
**To:** Harrington J E (DSCYF)
**Subject:** RE:

So Brown was never AOD that weekend or day in question. The allegation was brought out during our attempted mediation with DR. Marquis at DOL and Shirley seemed to think he may have been AOD that weekend and had to be in the area more often than normal (I don't think that sentence is grammatically correct whatever you know what I mean).

-----Original Message-----
**From:** Harrington J E (DSCYF) [mailto:J.Harrington@state.de.us]
**Sent:** Monday, June 28, 2004 4:03 PM
**To:** Smith Karen R (DSCYF)
**Subject:** RE:

11/24/03 was a Monday. I was on vacation that week. We do not have an AOD on that day unless it was a holiday. The weekend before, (11/22 & 11/23) Mr. Benson and Ms. Lowman worked. The following weekend (11/29 & 11/30) Mr. Croner and Mr. Boyer worked. This information was obtained from the admissions log books for those dates.

Mr. Brown does not interact with Dr. Marquis when I am present. Yes that is the agreement, normal business interaction permitted but no social or personal interactions. I have talked to both about this so they are both aware of the parameters.

Dr. Marquis received a policy book and signed for it on. I have the sign off sheet.

Ms. Bryson is her immediate supervisor. Dr. Marquis has not filed a grievance to my knowledge.
-----Original Message-----
**From:** Smith Karen R (DSCYF) [mailto:Karen.R.Smith@state.de.us]
**Sent:** Monday, June 28, 2004 1:21 PM
**To:** Harrington J E (DSCYF); Bryson Shirley R (DSCYF)
**Cc:** Coleman Norwood J (DSCYF)
**Subject:**

We are responding to Dr. Marquis discrimination complaint against M. Brown and need to verify a couple of things.

Could you please verify that records show that Mike Brown was AOD on the weekend of November 24, 2003 when Dr. Marquis alleges the "he lingered outside my office at a counter for extended periods of time.

We have also stated that as part of the agreement and recommendation due to the 9/2003 sexual harassment findings and previous agreement between Dr. Marquis and Mr. Brown, it has been stipulated that communication between the two on normal business is permitted. Communications of a personal nature by Mr. Brown to Dr. Marquis

are prohibited.  Both the Center's administrator and deputy administrator have monitored Mr. Brown's interactions with DR. Marquis and found no violation of this agreement.  Is this an accurate statement?

Did Dr. Marquis receive a policy manual?  If so, did she sign for it like other staff?  If so, may I have a copy of her signed statement?

Are you, Shirley, her immediate supervisor?
Has she ever filed an official grievance in respect to Mr. Brown harassing her?  If so, may I have a copy of any findings?  I have indicated no, because I have not seen any at my level how about facility level?

Thanks,
Karen

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974

**ENTER CHARGE NUMBER**

☐ FEPA *03/2201*

☐ EEOC *17CA400195*

**Delaware Department of Labor** and EEOC

*(State, or local Agency, if any)*

| | |
|---|---|
| **NAME** (Indicate Mr., Mrs., Ms)<br>Anne Marie Marquis | **HOME TELEPHONE NO.** (Include Area Code)<br>(302) 996-4974 |

| | | |
|---|---|---|
| **STREET ADDRESS**<br>233 Greenbank Rd Apt. B-1 | **CITY, STATE AND ZIP CODE**<br>Wilmington DE 19808  NCC | **COUNTY** |

**NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME** *(If more than one, list below.)*

| | | |
|---|---|---|
| **NAME**  State of Delaware/DSCYF<br>New Castle County Detention Center | **NO. OF EMPLOYEES OR MEMBERS 15+** | **TELEPHONE NUMBER** (Incl. Area Code)<br>(302) 633-3100 |

| | |
|---|---|
| **STREET ADDRESS**<br>1825 Faulkland Road | **CITY, STATE AND ZIP CODE**<br>Wilmington, DE  19805 |

| | |
|---|---|
| **NAME** | **TELEPHONE NUMBER** (Include Area Code) |

| | |
|---|---|
| **STREET ADDRESS** | **CITY, STATE AND ZIP CODE** |

| | |
|---|---|
| ☐ RACE ☐ COLOR ☒ SEX ☐ RELIGION ☐ NATIONAL ORIGIN ☐ AGE<br><br>☐ RETALIATION   ☐ DISABILITY ☐ OTHER (Specify) | **DATE DISCRIMINATION TOOK PLACE**<br>**EARLIEST** 7/15/1999<br>**LATEST**   12/9/2003<br>☒ CONTINUING ACTION |

**THE PARTICULARS ARE** (If additional space is needed, attached extra sheet(s):

I. I am a female individual who has been working for Respondent since 06/16/99 most recently as a Child Psychologist. In the summer of 1999 I was sexually harassed by a co-worker, Mr. Mike Brown. This issue was immediately reported to my supervisor, Dr. Andrew Hadden. Dr. Hadden then reported this complaint to Mr. Darryl Dawson, (Administrator). Following this notification, Mr. Brown ceased making direct physical and sexual comments towards me. However, from this time on Mr. Brown persisted in using eye contact and interactions in the office to intimidate me. In 2000, Mr. Brown was promoted to a supervisor position and as a result moved to an entirely different shift than mine (C-shift). Since this time, I have come into work on the weekends and have been approached by Mr. Brown only to be extremely harassed and intimidated to the point of a very hostile work environment. In March 2003, Mr. Brown was moved to my same shift. In March and April of 2003, in light of Mr. Brown's transfer back to my shift I made both my supervisor, Earl Harrington and Mr. Norwood Coleman, Affirmative Action Representative of Human Resources aware of my concerns with regard to Mr. Brown's actions towards me. A meeting was called on 04/11/03 with Mr. Harrington , Mr. Brown and myself where Mr. Brown verbally admitted to one of the weekend incidents. Following this meeting, Mr. Brown continued his severe intimidation and sexual harrassment of me. I lodged a formal complaint in May of 2003 with Human Resources which resulted in an investigation. On 09/29/03 a decision was made that the allegation I made was substantiated and that recommendations for action have been made to the appropriate Division officials. To date I am continually subjected to Mr. Brown's intimidation.

II. Respondent has not taken any disciplinary action against Mr. Brown.

III. I believe I have been discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended and the Delaware Discrimination in Employment Act by being sexually harassed by Mr. Brown. During the meeting on 04/11/03, Mr. Brown verbally admitted to 1. previously stating  he would like to see me in spandex and 2. to physically cornering me in my office during the weekend to rationalize his actions. Presently, Mr. Brown has an office in another part of the building but continually comes to my work area and hangs around my office in an attempt to have contact with me. Mr. Brown makes weekly attempts when I come out of my office to interupt my path of travel and make his presence known as a form of intimidation. This was most clearly demonstrated during the week of 11/24/03 when Mr. Brown's supervisor was on vacation and Mr. Brown literally lingered outside my office at a counter for extended periods of time each day.

| | |
|---|---|
| ☒ I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | **SIGNATURE OF COMPLAINANT**<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>12/15/03  AMMarquis, PhD. | **NOTARY -** (When necessary to meet State and Local Requirements)<br><br>A00061 |

Children, Youth, & Their Famil
Original - Shortlisted

**Certification List**

| | Run Date/Time: | 11/12/04 10:43:30 AM | | |
|---|---|---|---|---|

Type:         Open
County(s):    New Castle
Request Date: 11/12/04   From:
Class:        Child Psychologist
Selective(s):

Page:         1
Issue Date:   11/12/04
Request No.:  26276
Register No.: 13724
Position(s):  None

| | Score | Name/Preference/Comments | Address/Phone | Action Taken |
|---|---|---|---|---|
| 1 | ▓▓▓ | ▓▓▓▓▓ | ▓▓▓ | |
| 2 | | Marquis, Anne Marie PhD | 233 Greenbank Rd - B1 | |
| | | | Wilmington, DE 19808 | |
| | | | Home: (302)996-4974 | |
| | | | Work: (302)993-3990 | |
| 3 | ▓▓▓ | ▓▓▓▓ | ▓▓▓▓ | |
| 4 | ▓▓▓ | | ▓▓▓▓▓ | |

CONFIDENTIAL - Applications -at completion —
please shred or return to Human Resources.

*(handwritten notes, Action Taken column)*

called @ 8:30 / 10:00 8:30
Will call in 11/9 @
left voice message   11/6

contacted & works / released from
left voice message 11/6
3:c, 11/9 @ 1:00

called & left voice mail for
11/1 @ 10:30
Requested removal from current consid-
eration on 11/5 @ 3:58 pm.
left message 11/6
declined letter 11/7

000160

A00062

Children, Youth, & Their Famil
Original - Shortlisted

Certification List

Run Date/Time:      11/12/04 10:43:30 AM

Type:               Open
County(s):          New Castle
Request Date:       11/12/04   From:
Class:              Child Psychologist
Selective(s):

Page:               2
Issue Date:         11/12/04
Request No.:        26276
Register No.:       13724
Position(s):        None

Score   Name/Preference/Comments        Address/Phone        Action Taken

5

Issued by: _____

Hiring Manager: _____
Hiring Agency: _____
Personnel Authorization: _____

**NOTE: This list must be returned by 12/12/04 . It is invalid and will not be accepted after this date.   Upon returning this list, do you need another list for this class?  ____ Yes  ____ No.  For what BPs?**

000161

A00063

## AFFIRMATIVE ACTION FORM

Classification applied for: _Child Psychologist_

Name: _Rosemary Szczechowski_    Date Form Letter Sent: _13/10/04_

Date Called: _11/16/04_  Date Interviewed: _11/19/04_  Sex:  M  (F)  Race: _C_

Reason selected/~~not selected~~: ████████████████████████████████

Reason applicant was not interested in position: _____

Hiring Manager: _Darryl Dawson_ Human Resources Specialist: _____

---

Classification applied for: _Child Psychologist_

Name: _Ann Marie Marquis_    Date Form Letter Sent: _____

Date Called: _11/16/04_  Date Interviewed: _____  Sex:  M  (F)  Race: _C_

Reason selected/not selected: _____

Reason applicant was not interested in position: ███████████████████████

Hiring Manager: _Darryl Dawson_ Human Resources Specialist: _____

---

Classification applied for: _Child Psychologist_

Name: _Sarah Marvien_    Date Form Letter Sent: _____

Date Called: _11/16/04_  Date Interviewed: _11/19/04_  Sex:  M  (F)  Race: _C_

Reason selected/not selected: _____

Reason applicant was not interested in position: ████████████████████████

Hiring Manager: _Darryl Dawson_ Human Resources Specialist: _____

A00064

# AFFIRMATIVE ACTION FORM

Classification applied for: _Child Psychologist_

Name: _Kevin Keough_  Date Form Letter Sent: _____

Date Called: _11/16/04_  Date Interviewed: _11/19/04_  Sex: (M)  F   Race: _C_

Reason selected/not selected: ███████████████████████████████████

Reason applicant was not interested in position: _____

Hiring Manager: _Daryl Dawson_  Human Resources Specialist: _____

---

Classification applied for: _____

Name: _____  Date Form Letter Sent: _____

Date Called: _____  Date Interviewed: _____  Sex:  M   F   Race: ____

Reason selected/not selected: _____

Reason applicant was not interested in position: _____

Hiring Manager: _____  Human Resources Specialist: _____

---

Classification applied for: _____

Name: _____  Date Form Letter Sent: _____

Date Called: _____  Date Interviewed: _____  Sex:  M   F   Race: ____

Reason selected/not selected: _____

Reason applicant was not interested in position: _____

Hiring Manager: _____  Human Resources Specialist: _____

000163

A00065

Children, Youth, & Their Famil
Original - Shortlisted

**Certification List**

| | |
|---|---|
| Run Date/Time: | 09/22/04 09:29:22 AM |
| Type: | Open |
| County(s): | New Castle |
| Request Date: | 09/22/04  From: Karen Smith (NCC) |
| Class: | Child Psychologist |
| Selective(s): | |

| | |
|---|---|
| Page: | 1 |
| Issue Date: | 09/22/04 |
| Request No.: | 26015 |
| Register No.: | 13724 |
| Position(s): | None |

| | Score | Name/Preference/Comments | Address/Phone | Action Taken |
|---|---|---|---|---|
| 1 | ███ | *Interviewed Oct. 13, 2004 1000 Am* | *white* → | 10/4/04 disconnected |
| 2 | ███ | *NOT Selected.* | | 10/4/04 No Longer employed. |
| 3 | ███ | Marquis, Anne Marie PhD  *Interviewed Oct. 13, 2004 2:00 Pm* <br> *Selected but Declined Position.* | 233 Greenbank Rd - B1 <br> Wilmington, DE 19808 <br> Home: (302) 996-4974 <br> Work: (302) 993-3990 | |
| 4 | ███ | *Scheduled for Interview Oct. 13, 2004,* <br> *Called cancelled last minute.* | ███ | |

000164

A00066

11/3/04 Closed 89

Children, Youth, & Their Famil
Original - Shortlisted

# Certification List

Run Date/Time:    09/22/04 09:29:22 AM

Type:             Open
County(s):        New Castle
Request Date:     09/22/04  From: Karen Smith    (NCC)
Class:            Child Psychologist
Selective(s):

Page:             2
Issue Date:       09/22/04
Request No.:      26015
Register No.:     13724
Position(s):      None

| Score | Name/Preference/Comments | Address/Phone | Action Taken |
|---|---|---|---|
| 5 | *Interviewed Oct. 13, 2004 8:30Am Selected and Accepted Position.* | | |
| 6 | | | |
| 7 | *Interviewed Oct. 13, 2004 9:15 Am NOT Selected.* | | 10/4/04 left several messages |
| 8 | *Returned call has already Accepted another position else where* | | 10/14/04 No Longer employeed 10/4/04 Left message |

Issued by: _____

Hiring Manager: _____
Hiring Agency
Personnel Authorization: _____

[signatures]  10/29/04

**NOTE: This list must be returned by 10/22/04. It is invalid and will not be accepted after this date. Upon returning this list, do you need another list for this class?   ___ Yes  ✓ No.  For what BPs? _____**

A00067

## AFFIRMATIVE ACTION FORM

Classification applied for: _Child Psychologist_

Name: _Kevin Keough_    Date Form Letter Sent: _10/29/04_

Date Called: _10/4/04_    Date Interviewed: _10/13/04_ Sex: (M) F    Race: _W_

Reason selected/(not selected): ███████████████████████████

Reason applicant was not interested in position: _N/a_

Hiring Manager: _G. Fuller Sr._    Human Resources Specialist: _____

---

Classification applied for: _Child Psychologist_

Name: _Ann Marquis_    Date Form Letter Sent: _10/29/04_

Date Called: _10/4/04_    Date Interviewed: _10/13/04_ Sex: M (F)    Race: _W_

Reason (selected)/not selected: _Very strong interview and already working within agency. (Declined the Position)_

Reason applicant was not interested in position: _Reporting time, and also desired to bring intern with her._

Hiring Manager: _G. Fuller Sr._    Human Resources Specialist: _____

---

Classification applied for: _Child Psychologist_

Name: _Jacqueline M'Michael_ Date Form Letter Sent: _N/a_

Date Called: _10/4/04_    Date Interviewed: _10/13/04_ Sex: M (F)    Race: _B_

Reason (selected)/not selected: ███████████████████████

Reason applicant was not interested in position: _N/a_

Hiring Manager: _G. Fuller Sr._    Human Resources Specialist: _____

A00068

## AFFIRMATIVE ACTION FORM

Classification applied for: _Child Psychologist_

Name: _Rosemary Szczechowski_ Date Form Letter Sent: _10/29/04_

Date Called: _10/4/04_ Date Interviewed: _10/13/04_ Sex: M (F) Race: _W_

Reason selected/(not selected): ████████████████████████████████

Reason applicant was not interested in position: _N/a_

Hiring Manager: _Q. Fuller Sr._ Human Resources Specialist: _____

---

Classification applied for: _____

Name: _____ Date Form Letter Sent: _____

Date Called: _____ Date Interviewed: _____ Sex: M   F   Race: ____

Reason selected/not selected: _____

Reason applicant was not interested in position: _____

Hiring Manager: _____ Human Resources Specialist: _____

---

Classification applied for: _____

Name: _____ Date Form Letter Sent: _____

Date Called: _____ Date Interviewed: _____ Sex: M   F   Race: ____

Reason selected/not selected: _____

Reason applicant was not interested in position: _____

Hiring Manager: _____ Human Resources Specialist: _____

## Smith Karen R (DSCYF)

| | |
|---|---|
| **From:** | Smith Karen R (DSCYF) |
| **Sent:** | Friday, October 22, 2004 8:19 AM |
| **To:** | Marquis Anne M (DSCYF) |
| **Subject:** | RE: questions about "lateral transfers" |
| **Sensitivity:** | Confidential |

A permanent employee transferred to a different position, same classification, pay grade, and substantially the same job duties, shall not be subject to a "probationary period" in the new position.

-----Original Message-----
**From:** Marquis Anne M (DSCYF)
**Sent:** Thursday, October 21, 2004 1:43 PM
**To:** Smith Karen R (DSCYF)
**Subject:** RE: questions about "lateral transfers"
**Importance:** High
**Sensitivity:** Confidential

Thanks for your answers. I have one more question:

If you accept a lateral transfer, are you placed on "probation" and do you have a "probationary period" again? Thanks very much!

Anne-Marie Marquis, Ph.D.
Clinical Psychologist
New Castle County Detention Center
302-993-3990

-----Original Message-----
**From:** Smith Karen R (DSCYF)
**Sent:** Thursday, October 07, 2004 8:42 AM
**To:** Marquis Anne M (DSCYF)
**Subject:** RE: questions about "lateral transfers"
**Sensitivity:** Confidential

Yes, Later Transfer simply means a transfer to another location/division/department within the same classification, so again yes a Child Psychologist within CMH applying for the position would also be considered a lateral transfer. It would not afford you any preferential treatment. All qualified candidates are treated equal throughout the interview/selection process.

Good Luck with your interview.
-----Original Message-----
**From:** Marquis Anne M (DSCYF)
**Sent:** Wednesday, October 06, 2004 9:33 AM
**To:** Smith Karen R (DSCYF)
**Subject:** questions about "lateral transfers"
**Sensitivity:** Confidential

I am interviewing for a position at Ferris next week, Mike Dencker's former position.

1. Would this be a "lateral transfer"?
2. What preferences would be given to me during the selection process due to that status of being a lateral transfer?

**000168**                                    A00070

3.  If someone from CMH applies that is also a psychologist, would that psychologist be considered a lateral transfer?

4.  With me already being an employee of YRS, would this give me preference over someone from CMH if they were applying for this position?

Thanks for any information and answers to these questions you can provide, Anne-Marie

Anne-Marie Marquis, Ph.D.
Clinical Psychologist
New Castle County Detention Center
302-993-3990

000169

A00071

1/19/2005

State of Delaware

## The Department of Services for Children, Youth and Their Families

| Division of Youth Rehabilitative Services | • | New Castle County Detention Center | • | Phone: 302 - 633 - 3100  Fax:    302 - 995 - 8393 |

April 26, 1999

Dear Dr. Marquis,

Upon the recommendation of Mr. Dawson, the New Castle County Detention Center in conjunction with myself, I am pleased to offer you a probationary appointment to the position of child psychological assistant II within the Division of Youth Services. The effective date of hire for this position, upon your acceptance, is June 1999 with a starting annual salary of $38,336.    16th

On behalf of the Division, we are delighted to have you as a member of our team and look forward to your joining us in the neer future. If you would like you may contact our human resources department at 302-633-2532 prior to your start date to make inquiry about beniefits and the like.

I am greatly looking forward to working with you.

Sincerely,

Psy/Psych III

Andrew L. Hadden, Psy.D., Psych III

3134

New Castle County Detention Center
963 Centre Road   •   Wilmington, Delaware 19805

000204

A00072

# DEPARTMENT OF SERVICES FOR CHILDREN, YOUTH AND THEIR FAMILIES

## DISCRIMINATION PROHIBITED

The Department of Services for Children, Youth and Their Families is committed to the principles of equal employment opportunity, affirmative action, and equitable service delivery. This Agency prohibits any form of unlawful discrimination in all personnel, employment and service delivery areas. Specifically, no person shall be denied service, excluded from benefits, or refused employment because of race, creed, religion, color, sex, age, national origin, or handicap. It is also the policy of the Department not to discriminate in personnel, employment or service delivery areas based on sexual preference.

Every client for aid or services and every employee including each applicant for employment, have the right under the law to register complaints when it is felt that the law has been violated in any respect. The complaint may be registered with the Division Director in the event of services areas, or with the Department's Affirmative Action Officer, State Human Relations Commission, United States Department of Health and Human Services, or by Merit System Appeal procedure (Section 21.0114).

Procedure for complaints is as follows:

1. Complaints must be filed
   . . ."within on e hundred and eighty (180) days after the alleged unlawful employment practice" (Section 706 (e) Title VII or Civil Rights Act of 1964 as amended in 1972).

   . . ."within ninety (90) days after the alleged employment practice or one hundred and twenty (120) days after-discovery thereof, whichever is the later." (Title XIX, Chapter 7, Section 712(d), Delaware Code)

   . . ."within ten (10) days of the action being appealed" (Merit Rule 21.0114).

2. The complaint and request for a hearing must be made in writing addressed to persons indicated in above paragraph.

3. Receipt of the request will be acknowledged and a hearing will be scheduled according to the prescribed procedure.

4. No employee or applicant will be subject to retaliation because he/she has made a charge of discrimination or testified in a hearing resulting from a complaint.

over

A00072A

**DISCRIMINATION PROHIBITED**                                    **PAGE TWO**

5.    Complaints of discrimination based on sexual preference may be filed with the
      Department's Affirmative Action Officer.

**ALL EMPLOYEES** are requested to acknowledge their awareness of the above by signing the
following statement which will be filed in personnel folders in case of employment application, or
in the client's case review folder if appropriate.

**DATE:** 4/16/99

This is to certify that I, the undersigned, have been fully instructed in the Civil Rights provisions
recorded above and understand the rights of both employees and clients for services in the
Department of Services for Children, Youth and Their Families.

I have read the procedure for complaints of both employee and clients and will make every effort
to assist all clients of services supplied by this Department to insure strict compliance with Civil
Rights laws and regulations.

**EMPLOYEE'S/CLIENT'S SIGNATURE:** _Ann Mark_

**Classification (if appropriate)**

_Psychological Assistant_

**Facility/Division**

_New Castle Co. Detention Center_

                    A00072ß